## STATE OF OREGON,
*Respondent,*

*v.*

## JOHN THOMAS,
*Appellant.*

(C8810-37156; CA A62938)

799 P2d 208

Robert L. Wolf, Portland, argued the cause and submitted the brief for appellant.

Richard Wasserman, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Dave Frohnmayer, Attorney General, and Virginia Linder, Solicitor General, Salem.

Before Warren, Presiding Judge, and Riggs and Edmonds, Judges.

EDMONDS, J.

## EDMONDS, J.

Defendant appeals his conviction for possession of a controlled substance, ORS 475.992(1), asserting that the trial court erred in upholding the stop of an automobile in which he was a passenger and in finding that defendant had voluntarily consented to the search of his person after the stop. We affirm.

Portland Police Officers Stradley and Weatheroy observed a Toyota automobile parked in front of a suspected drug house in Portland. Defendant and another person were passengers in the automobile. The officers saw a man walk up to the car from around the corner near a shop that sold drug paraphernalia. He got into the car, which remained stationary for several more minutes, while the officers drove around the block and approached it from the opposite direction.

When the police car was approximately 15-20 feet away, the Toyota abruptly pulled from the curb toward the officers' car. The driver did not signal before leaving the curb. Although the Toyota did not strike the police car or cross the center line as it passed by, the officers slowed to avoid a possible collision. The officers then pursued and stopped it a short distance away for a purported violation of ORS 811.400(1).[1]

Stradley placed the driver in the police car. Both officers then went around to the passenger side and, looking through the window, saw a transparent glass vial in plain sight between the legs of defendant. The vial contained a white powdery substance that Weatheroy suspected was cocaine. One officer asked defendant to get out of the car. He advised defendant of his *Miranda* rights, which defendant indicated that he understood. Stradley asked him whether he had any drugs on his person. He said that he did not. Stradley asked if he could search defendant. He consented, and the officer discovered a large piece of what was identified as rock cocaine in defendant's shirt pocket.

Defendant argues that the trial court erred in upholding the stop of the car for a traffic infraction when it found

---

[1] Neither party contests the applicability of the Motor Vehicle Code to the Portland street.

that the car had moved, without signaling, from a "parking lane" into a "travel lane." Defendant asserts that ORS 811.400(1) does not require a motorist to signal before leaving a parked position at the curb and that there was no evidence that the entry into the traffic lane was not reasonably safe, because the only traffic was the oncoming police car.

ORS 811.400(1) provides:

"A person commits the offense of failure to use an appropriate signal for a turn, *lane change* or stop if the person is operating a vehicle that is turning, changing lanes, stopping or suddenly decelerating and the person does not make the appropriate signal under ORS 811.395 by use of signal lamps or hand signals." (Emphasis supplied.)

ORS 801.305 defines "highway":

"[E]very public way, road, street, thoroughfare and place including bridges, viaducts and other structures within the boundaries of this state, open, used or intended for use of the general public for *vehicles or vehicular traffic as a matter of right.*" (Emphasis supplied.)

A highway, therefore, consists of roadways used by either stationary *or* moving vehicles. On the other hand, a lane is an area of a highway designated for a particular use by a single line of vehicles, *Webster's Ninth New Collegiate Dictionary* 672 (1988), and to which specific driving duties apply.

We presume that, in the Motor Vehicle Code, the legislature acted deliberately when it has qualified the term "lane" in other instances.[2] Because the legislature did not qualify "lane" in ORS 811.400, it is apparent that the legislature intended ORS 811.400(1) to apply to all lanes of the highway, including those used for parking. *See Emerald PUD*

---

[2] For example, ORS 811.310(1) states that the duty to avoid crossing the center line applies only to roadways with "four or more lanes *for moving traffic.*" (Emphasis supplied.) ORS 811.325(1) limits the duty to keep a camper, trailer or truck in the right lane of "roadways having two or more lanes *for traffic.*" (Emphasis supplied.) *See also* ORS 811.370(1) (duty to drive within lane applies only to roadways divided into "two or more clearly marked lanes *for traffic*" (emphasis supplied)); and ORS 811.380(1) (duty to avoid improper use of center lane applies only to roadways "divided into three clearly marked lanes for *traffic*" (emphasis supplied)). These examples suggest that the legislature knows how to limit particular duties to specific areas of the highway.

*v. PP&L,* 302 Or 256, 269, 729 P2d 552 (1986).[3] Therefore, the duty to signal before making a lane change under ORS 811.400(1) attaches when a driver moves from an on-street parking lane into the traffic lane. Our interpretation comports with the general mandate of the Motor Vehicle Code "[t]o provide maximum safety for all persons who travel or otherwise use the public highways of this state * * *." The broad directive indicates that the courts should liberally interpret the code's specific provisions. It follows that the stop of the car in which defendant was a passenger was lawful.[4]

---

[3] Defendant directs our attention to *former* ORS 487.400(1), which provided:

"A person commits the offense of unlawfully moving a stopped, standing or parked vehicle if he moves a vehicle so stopped standing or parked when the movement cannot be made with reasonable safety."

Defendant asserts that that provision is the forerunner of ORS 811.400(1). He then cites Or Laws 1983, ch 338, § 3, which states that the 1983 amendments to the Motor Vehicle Code were not intended to provide any substantive changes, but were merely a means of clarifying existing vehicle laws. Reading the two provisions together, defendant maintains that, because *former* ORS 487.400(1) did not specifically require drivers to signal before leaving a parked position at the curb, ORS 811.400(1) also imposes no such requirement.

Other than minor grammatical differences, *former* ORS 487.400(1) is identical to ORS 811.565(1). A comparison suggests that the drafters of the 1983 amendments combined elements of *former* ORS 487.405(1) and (2) in ORS 811.400 to require a proper signal for a turn, lane change or stop, regardless of whether any safety hazard exists. *Former* ORS 487.405 provided, in part:

"(1) A driver commits the offense of unlawful turn or change of lane if he turns or moves right or left upon a highway when:

"(a) The movement cannot be made with reasonable safety; or

"(b) He fails to give an appropriate signal as provided in ORS 487.410 continuously during not less than the last 100 feet traveled by the vehicle before turning.

"(2) A driver commits the offense of unlawful stop or deceleration if he stops or suddenly decreases the speed of a vehicle without first giving an appropriate signal as provided in ORS 487.415 to the driver immediately to the rear when there is opportunity to give the signal."

ORS 811.400(1) does not expressly require that a safety hazard exist before the duty to signal arises. If we were so to read ORS 811.400(1), we would be adding language that would render ORS 811.565(1) superfluous. Further, *former* ORS 487.405(2), arguably the predecessor of ORS 811.400(1), expressly protected vehicles "immediately to the rear" of the driver. ORS 811.400(1) contains no such limitation.

[4] The state also argues that the stop was valid under ORS 811.375(1), which provides, in part, that

"a person commits the offense of unlawful or unsignaled change of lanes if the person is operating a vehicle upon a highway and the person changes lanes by moving to the right or left upon the highway when:

"(a) the movement cannot be made with complete safety * * *."

Given our conclusion that the stop was valid under ORS 811.400(1), we do not decide this issue.

■ Defendant also assigns as error the trial court's finding that defendant had voluntarily consented to the search of his shirt pocket. In the light of our conclusions regarding defendant's first assignment of error, the officer was at a place where he had a right to be when he observed between defendant's legs a transparent glass vial containing a white powdery substance. That observation created probable cause for arrest, justifying the officer's search of defendant's person incident to the arrest. Consent was immaterial.

Affirmed.