Argued and submitted September 7, decision of Court of Appeals affirmed;
judgment of circuit court reversed, and case remanded to circuit court
for further proceedings November 24, 2006

Lawrence KELLER
and Patricia Keller,
*Respondents on Review,*

*v.*

ARMSTRONG WORLD INDUSTRIES, INC., et al,
*Defendants,*

*and*

BORG-WARNER AUTOMOTIVE, INC.,
a Delaware corporation,
fka Borg-Warner Corporation,
individually and as successor-in-interest to
Borg-Warner Corporation - Borg & Beck Division,
and Borg-Warner Corporation - Rockford Clutch Division;
*Defendant-Respondent,*

*and*

TENNECO AUTOMOTIVE OPERATING COMPANY INC.,
a Delaware corporation,
*Petitioner on Review.*

(No. 0010-10816; CA A117518; SC S52801)

147 P3d 1154

Thomas W. Sondag, Lane Powell, PC, Portland, argued the cause and filed the brief for petitioner on review.

James Coon, Swanson, Thomas & Coon, Portland, argued the cause and filed the brief for respondents on review. With him on the brief was Scott Niebling, Brayton Purcell LLP, Portland. Elaine J. Brown, Brayton Purcell LLP, Portland, filed the response to the petition for review for respondents on review.

Before De Muniz, Chief Justice, and Carson, Gillette, Durham, Balmer, and Kistler, Justices.**

KISTLER, J.

---

** Riggs, J., retired September 30, 2006, and did not participate in the consideration or decision of this case. Walters, J., did not participate in the consideration or decision of this case.

## KISTLER, J.

In October 2000, plaintiff filed this product liability action alleging that working with defendant's asbestos products had damaged his lungs.[1] Defendant moved for summary judgment, claiming that a two-year statute of limitations barred plaintiff's claim. Defendant contended that plaintiff had known of the possibility that asbestos was the cause of his pulmonary problems since the mid-1980s and that plaintiff had referred to his "asbestos lungs" when seeking social security disability and workers' compensation benefits in 1994 and 1995.

The trial court granted defendant's motion, ruling as a matter of law that plaintiff either had discovered or should have discovered that asbestos had caused his pulmonary problems more than two years before he filed this action. The Court of Appeals reversed; it reasoned that a reasonable juror could find that plaintiff neither had discovered nor should have discovered the cause of his pulmonary problems earlier than he did. *Keller v. Armstrong World Industries, Inc.*, 197 Or App 450, 107 P3d 29, *adh'd to on recons*, 200 Or App 406, 115 P3d 247 (2005). We allowed review and now affirm the Court of Appeals decision.

Plaintiff worked as an automobile mechanic from 1960 until the mid-1970s, specializing in muffler and exhaust work. From the mid-1970s until 1987, plaintiff managed his own muffler business. Defendant manufactured or supplied some of the mufflers on which plaintiff worked; some of those mufflers were wrapped in asbestos. As a result, plaintiff was exposed to asbestos for many years, a fact that he became aware of by the 1970s.

In the mid-1980s, plaintiff began experiencing respiratory problems. Beginning in 1986, plaintiff saw Dr. Patterson, a pulmonologist, regarding those problems. During their first visit, Patterson asked plaintiff about his work environment. After plaintiff explained his history of

---

[1] Plaintiffs Lawrence and Patricia Keller brought this action against several defendants. We refer to Lawrence Keller as plaintiff. Only defendant Tenneco Automotive Operating Company, Inc., seeks review of the Court of Appeals decision, and we refer to it as defendant.

working with asbestos, Patterson performed a bronchoscopy that showed mild interstitial fibrosis and anthracosis but no asbestos bodies. Patterson diagnosed interstitial lung disease.[2] He recommended that plaintiff "get out of the exhaust business," explaining that continued exposure to asbestos could be harmful. Plaintiff sold his muffler business shortly afterward and purchased a building supply store.

In May 1991, a physician's assistant referred plaintiff to another pulmonologist, Dr. Kintz, because of plaintiff's continuing lung problems. After reviewing plaintiff's medical history and contemporary test results, Kintz wrote to the referring physician's assistant that he had a "suspicion [that plaintiff] has mild pulmonary fibrosis, possibly related to asbestos exposure." One month later, Kintz noted in plaintiff's medical records that plaintiff suffered from "restrictive lung disease related to prior asbestos or muffler fume exposure."

In late 1991, plaintiff applied for social security disability benefits, stating that he had "lungs fibrous." In the application, plaintiff reported that his condition prevented him from doing his job and that he had stopped working on April 15, 1991. In response to a question on his work history, plaintiff wrote that he "fe[lt] the prolonged exposure to exhaust fumes dust & asbestos for so many years is to blame for my lung condition."

In March 1992, plaintiff requested reconsideration of his social security disability application, which the Social Security Administration apparently had denied. In that document, plaintiff stated that he had been to see another physician, Dr. Musa, for an unrelated condition and that Musa had suggested that he see Kintz again. Plaintiff explained that he went back to see Kintz because of "decreasing lung function, [to] check on disease progress, [and] black spots on lungs."[3]

---

[2] The record reflects medical diagnoses of "interstitial lung disease" and "pulmonary fibrosis." The record does not contain any evidence explaining either the nature of or the potential causes of those conditions. The record permits the inference, however, that those conditions may result from exposure to several substances, one of which is asbestos.

[3] The record includes a document captioned "Development Worksheet." The worksheet is a compilation of medical events that occurred from May 29, 1991 to

In August 1992, plaintiff requested a hearing on his disability claim, stating that his "lung condition" was worsening and that he had seen Kintz in July. Plaintiff appears to have contacted a lawyer regarding his disability claim because Kintz wrote a letter to a lawyer three months later stating that, based on studies done in June 1991 and July 1992, plaintiff "would appear to meet the criteria for disability for patients with pulmonary fibrosis based on his height." Kintz did not identify the cause of plaintiff's pulmonary fibrosis.

In December 1993, plaintiff visited an emergency room because of abdominal pain. The emergency room record states that, in addition to abdominal pain and chronic back pain, plaintiff "admits to lung problems and is being treated for asbestosis."

Following plaintiff's visit to the emergency room, he elected to undergo surgery in 1994 to repair an abdominal aneurism. In March 1994, in preparation for that surgery, Patterson wrote a preoperative evaluation stating that plaintiff suffered from, among other things, "interstitial lung disease." Patterson observed that plaintiff's first five years of work (from 1960 to 1965) involved "significant asbestos exposure" and that plaintiff had "no other pertinent history as regards interstitial lung disease." Patterson concluded, however, that plaintiff's lung disease was of "uncertain" etiology. He noted that a recent chest x-ray showed "a slight increase in basilar markings which is relatively stable when compared to films over the last few years" and that he saw no changes distinctively characteristic of asbestos exposure.

In November 1994, plaintiff filed a second request to reconsider his social security disability application. In that request, plaintiff described his worsening back pain and lung condition, which harmed his mental state and made him angry and depressed. Plaintiff also described his aneurism

---

June 9, 1993. One event, dated May 28, 1992, states that someone (presumably plaintiff) suffers from "lung interstitial fibrosis from Dx of asbestosis." The worksheet does not indicate who compiled the information, the reason for compiling the information, or the source of the information. Although defendant refers once to the worksheet in its statement of facts, it does not rely on it in arguing that plaintiff's claim is time barred.

surgery and his family history of heart disease. Finally, plaintiff identified Kintz as his "lung doctor" and stated:

> "My lung doctor has told me to only do what my lungs will allow me to do, which he stated because of my asbestos lungs and psychological problems stem[m]ing from my illness would not allow me to carry on my regular work duties."

Later in the reconsideration request, plaintiff added:

> "My asbestos lungs only get worse with time[;] most patients get compl[ica]tions of cancer[.] Dr. Kintz & Dr. Patterson have both informed me no treatment will stop my lungs—will just get worse."

In January 1995, plaintiff filed a workers' compensation claim in which he stated that his "asbestos lung" was caused by "exposure to asbestos from manufacturing and installation of exhaust systems." In a separate document entitled "Activities of Daily Living and Socialization," plaintiff explained that his back pain and "asbestos lungs" rendered him unable to engage in any activities.[4]

In response to plaintiff's workers' compensation claim, SAIF referred plaintiff to Dr. Smith. In April 1995, Smith sent a letter to SAIF describing both the scope of his investigation and his conclusions. After taking plaintiff's medical history, reviewing the "available medical records" from plaintiff's doctors, and conducting his own tests, Smith concluded that plaintiff had "no asbestos related condition."

In reaching that conclusion, Smith determined that plaintiff's work history represented, at most, a moderate exposure to asbestos—one not likely to have been "heavy enough to cause asbestosis." Smith also determined that plaintiff's medical history and tests showed "no evidence of asbestos-related pleural disease or pleural thickening or

---

[4] Plaintiff stated:

"Because of my asbestos lungs, degenerative spine disease, which the doctors have told me nothing can be done to correct my problem, the only alternative is being sent to Oregon medical school for implant in back, to help control pain."

Although the quoted sentence is not completely clear, the dependent clause appears to modify "degenerative spine disease" rather than "asbestos lungs."

pleural fibrosis. There is no evidence of asbestos-related interstitial disease or asbestosis."

On May 25, 1995, a claims adjuster from SAIF sent a copy of Smith's report to Patterson, who checked a box stating that he "agree[d] with all of Dr. Smith's report" and returned the letter to the claims adjuster. On July 13, 1995, SAIF's lawyer sent Kintz a copy of the lawyer's June 23, 1995, letter to Smith and a copy of Smith's June 28, 1995, response. The cover letter to Kintz notes that, during a telephone conversation, Kintz had "agreed with Dr. Smith's comments, as stated in the June 28, 1995, letter." Kintz also signed a statement to that effect at the bottom of the cover letter, which he returned to SAIF's lawyer. The record, however, does not include either the lawyer's June 23, 1995, letter to Smith or Smith's June 28, 1995, response.

■ On April 10, 2000, Dr. Schaumberg diagnosed plaintiff as having "a[n] interstitial lung disease with a restrictive pulmonary defect." [5] Schaumberg concluded that, "[g]iven [plaintiff's] history of asbestos exposure, the most likely etiology is because of asbestosis." Six months later, in October 2000, plaintiff filed this product liability action alleging that his exposure to defendant's products had resulted in his incurring an asbestos-related disease.

As noted, defendant moved for summary judgment, arguing that plaintiff's product liability action was not timely. After a hearing, the trial court entered an order granting defendant's summary judgment motion and later entered judgment, pursuant to ORCP 67 B, as to defendant. On appeal, a divided Court of Appeals reversed. *Keller*, 197 Or App at 470. The majority reasoned that, in light of the doctors' uncertainty as to the cause of plaintiff's pulmonary problems, it could not say, as a matter of law, that plaintiff

---

[5] Defendant appears to argue that plaintiff may not rely on Schaumberg's letter because it was part of another summary judgment motion in this case. ORCP 47 C, however, recognizes that a trial court may consider "the pleadings, depositions, affidavits, declarations and admissions on file" in determining whether to enter summary judgment. That wording is broad enough to permit the court to consider not only the evidence submitted in support of and opposition to the summary judgment motion but also other pleadings and evidence "on file." *See* Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, 10A *Federal Practice and Procedure* § 2721, 366 (3d ed 1998) (discussing federal analogue to ORCP 47 C).

either had discovered or should have discovered more than two years before he filed this action that asbestos was the cause of those problems. *Id.* at 466-67. The dissent reasoned that plaintiff had sufficient information to cause him to undertake further inquiry than he did. *Id.* at 482 (Edmonds, J., dissenting). We allowed review to consider how ORS 30.907(1) applies to asbestos-related diseases.

ORS 30.907(1) defines when a product liability action based on exposure to asbestos products must be commenced. It provides:

> "A product liability civil action for damages resulting from asbestos-related disease shall be commenced not later than two years after the date on which the plaintiff first discovered, or in the exercise of reasonable care should have discovered, the disease and the cause thereof."

ORS 30.907(1).[6] In arguing that this statute bars plaintiff's claim, defendant relies primarily on the contention that plaintiff "actually discovered" the causal link between asbestos and his lung disease as early as the 1980s and at the latest by 1995, when plaintiff referred to his "asbestos lungs" in filing for social security disability benefits and workers' compensation. Alternatively, defendant argues that, at minimum, plaintiff "should have discovered" the causal link between asbestos and his pulmonary problems by 1995.

Defendant's arguments present two related but separate questions. We begin with the question whether plaintiff actually discovered, more than two years before he filed this action, that he had an "asbestos-related disease" and "the cause thereof." In the context of this case, that question does not entail complex issues of statutory interpretation. Rather, it requires only that we apply the plain words of the statute to the facts in the summary judgment record; that is, the question is whether the evidence in the summary judgment record *requires*, as a matter of law, a determination that plaintiff had discovered, more than two years before he filed

---

[6] ORS 30.905(2)(b) provides that, unless another statute provides an exception, a product liability action must be brought no more than 10 years "after the date on which the product was first purchased." ORS 30.907 is an exception to that statute. *See* ORS 30.905(2) (so stating); *Gladhart v. Oregon Vineyard Supply Co.*, 332 Or 226, 232, 26 P3d 817 (2001) (same).

this action, that he had an "asbestos-related disease" and "the cause thereof." *See Jones v. General Motors Corp.*, 325 Or 404, 420, 939 P2d 608 (1997) (stating standard of review).

On that issue, we note that, by 1994, plaintiff's two pulmonary doctors had diagnosed him as having "mild pulmonary fibrosis" and "interstitial lung disease."[7] Neither doctor, however, had diagnosed asbestos as the cause of those conditions; at most, they recognized only that asbestos was a possible cause. Kintz had stated his *"suspicion* [that plaintiff] has mild pulmonary fibrosis, *possibly* related to asbestos exposure." (Emphasis added.) Later, Kintz opined that exposure to either asbestos *or* exhaust fumes was the cause of the fibrosis. Kintz, however, did not determine which substance had caused that condition. Similarly, in a 1994 preoperative report, Patterson stated that the etiology of plaintiff's interstitial lung condition was "uncertain." Finally, in evaluating plaintiff's workers' compensation claim in 1995, Smith affirmatively concluded that plaintiff's pulmonary problems had not resulted from asbestos.

On this record, a reasonable juror could find that, in light of the difficulty of determining whether asbestos or some other agent (exhaust fumes, dust, or some other substance) was the cause of plaintiff's pulmonary conditions, plaintiff lacked the ability to discover the cause of those conditions without a diagnosis from a medical professional. *Cf. Uris v. Compensation Department*, 247 Or 420, 424-26, 427 P2d 753, 430 P2d 861 (1967) (holding that, except for "uncomplicated situation[s]," expert testimony is generally necessary to establish medical causation). A reasonable juror also could find that, because no doctor had diagnosed asbestos as the cause of plaintiff's pulmonary condition before Schaumberg did so in April 2000, plaintiff did not actually discover the cause of his lung disease until he received Schaumberg's diagnosis.

Defendant, however, argues that the evidence compels a different conclusion. The evidence on which defendant

---

[7] The record does not reveal whether those two diagnoses are different terms for a single condition or whether they reflect two separate diseases of the lungs; that is, no expert testimony reveals the relationship between the two diagnoses.

relies falls into two groups. First, defendant relies on evidence that plaintiff knew, by the mid-1990s at the latest, that he had been exposed to asbestos, that he had pulmonary problems, and that asbestos was a possible cause of those problems. Defendant thus notes that Kintz had concluded that plaintiff had "restrictive lung disease related to prior asbestos *or* muffler fume exposure." (Emphasis added.) Similarly, defendant relies on plaintiff's statement in 1991 that, "I feel that the prolonged exposure to exhaust fumes dust & asbestos for so many years is to blame for my lung condition." That evidence, however, identifies asbestos as only one of several possible causes of plaintiff's condition. A reasonable juror could infer from that evidence that, at most, plaintiff was aware that asbestos might be the cause of his pulmonary problems. Put differently, the evidence does not require a reasonable juror to find that plaintiff actually discovered that asbestos, in fact, had caused his pulmonary conditions.

Defendant raises a second argument. He notes that, in seeking social security disability benefits in 1994, plaintiff attributed a diagnosis of "asbestos lungs" to his pulmonary doctors. It also notes that, in applying for workers' compensation benefits in 1995, plaintiff described the nature of his work-related occupational disease as "asbestos lung." Defendant argues that the only permissible inference from those statements is that plaintiff had received a diagnosis of "asbestos lung" from at least one of his pulmonary doctors—a diagnosis that, defendant contends, necessarily demonstrates that plaintiff had discovered by 1995 that asbestos was the cause of his pulmonary disease.[8]

The difficulty with defendant's argument is that, on this record, a reasonable juror could find that no doctor had diagnosed plaintiff's pulmonary disease as "asbestos lung" by 1995. More specifically, a reasonable juror could find that, after plaintiff filed for workers' compensation in 1995, Smith undertook a comprehensive review of all plaintiff's available medical records. Although Smith discussed Patterson and

---

[8] Because Patterson stated in 1994 that the etiology of plaintiff's interstitial lung disease was uncertain, defendant's argument presumably rests on the contention that Kintz had diagnosed asbestos as the cause of plaintiff's lung condition some time between 1992 and 1994.

Kintz's treatment in his letter to SAIF, Smith did not note that either Patterson or Kintz had diagnosed asbestos as causing plaintiff's pulmonary disease. Indeed, Smith concluded that plaintiff "has no asbestos related condition," and Patterson agreed with that conclusion.

Given the comprehensive nature of Smith's review of plaintiff's medical history, a reasonable juror could find that, up to the time that Smith conducted his review, no doctor had diagnosed asbestos as the cause of plaintiff's pulmonary problems.[9] It follows that a reasonable juror also could find that plaintiff's references to his "asbestos lungs" did not reflect a medical diagnosis; rather, the references reflected either plaintiff's misperception of what his doctors had told him or his exaggeration of their diagnoses as part of an effort to demonstrate either to the Social Security Administration that he truly was disabled or to his workers' compensation insurer that his disease truly was work-related.

To be sure, a reasonable juror could find that plaintiff had received a diagnosis of "asbestos lungs" of which Smith was not aware. The point, however, is that the record does not compel that inference. On this record, we agree with the Court of Appeals that a reasonable juror could conclude that plaintiff's statements reflected nothing more than his own supposition. Plaintiff's own supposition, uninformed by any medical diagnosis that asbestos had caused his respiratory problems, is not sufficient to establish actual discovery of that fact.

The remaining issue is whether plaintiff "in the exercise of reasonable care should have discovered" that he had an asbestos-related disease and the cause thereof more than two years before he filed this action. On that issue, defendant contends that the Court of Appeals erred in interpreting the quoted phrase in ORS 30.907(1), while plaintiff argues that we should interpret the phrase in light of the unique nature of asbestos-related diseases.

---

[9] We note, as the Court of Appeals did, that this is not a case in which plaintiff had received conflicting medical diagnoses—one identifying asbestos as the cause of his pulmonary conditions and another identifying a different cause. Rather, this is a case in which a reasonable juror could find that no doctor had concluded that plaintiff had an asbestos-related disease.

The text of ORS 30.907(1) states a familiar standard; it provides that the statute of limitations begins to run when a plaintiff "in the exercise of reasonable care should have discovered" the disease and the cause thereof. This court has construed virtually the same phrase numerous times in interpreting another statute of limitation. *See, e.g., Greene v. Legacy Emanuel Hospital,* 335 Or 115, 60 P3d 535 (2002) (construing ORS 12.110(4), pertaining to claims arising from medical treatment); *Doe v. American Red Cross,* 322 Or 502, 910 P2d 364 (1996) (same); *Gaston v. Parsons,* 318 Or 247, 864 P2d 1319 (1994) (same). We perceive no reason why this court's interpretation of that phrase in ORS 12.110(4) does not provide relevant context in interpreting the same phrase in ORS 30.907(1); that is, we are not aware of any reason in the text, context, or legislative history of ORS 30.907(1) to interpret the two phrases differently.[10] Accordingly, we look to the decisions in *Gaston, Doe,* and *Greene* in interpreting and applying ORS 30.907(1).

Because an understanding of those three cases is helpful to applying the statutory standard, we describe them briefly before applying that standard to this case. In *Gaston,* this court considered ORS 12.110(4), the statute of limitations for claims arising from medical treatment. That statute required claims to be "commenced within two years from the date when the injury is first discovered or in the exercise of reasonable care should have been discovered." *See id.* at 251-52 (quoting statute).[11] In interpreting the phrase "in the exercise of reasonable care should have been discovered," the court explained:

---

[10] We note that ORS 30.907(1) differs from ORS 12.110(4) in one respect. ORS 30.907(1) refers to discovering an "asbestos-related disease" and "the cause thereof" while ORS 12.110(4) refers to discovering an "injury." However, both statutes use virtually the same phrase—"in the exercise of reasonable care should have discovered"—to describe the minimum level of knowledge that a plaintiff must have in order for the statute of limitations to begin to run.

[11] We note that ORS 12.110(4) refers to discovery of an "injury," which *Gaston* held consists of three elements: (1) harm; (2) causation; and (3) tortious conduct. 318 Or at 255. ORS 30.907(1), by contrast, refers to discovery of an "asbestos-related disease" and "the cause thereof." Although the phrase—in the exercise of reasonable care should have discovered—is virtually the same in both statutes, the legislature used different terms to describe what a plaintiff should have discovered.

"Actual knowledge * * * is not required. On the other hand, a mere suspicion is insufficient to begin the statute of limitations to run. We believe that a quantum of awareness between the two extremes is contemplated by the statute."

*Id.* at 256. The court also explained that the question whether a plaintiff "in the exercise of reasonable care should have" discovered an injury is an objective one. *Id.*

The court was careful to make clear that the question whether the plaintiff should have discovered that he or she had an injury turns, in the context of a medical malpractice claim, on the nature of the harm suffered, the nature of the medical procedure, and other relevant circumstances. *Id.* Accordingly, the court explained in *Gaston* that the fact that the plaintiff experienced numbness and a loss of function in his left arm after surgery was insufficient, on the facts of that case, to require a finding that the statute of limitations had begun to run. *Id.* at 258. In reaching that conclusion, the court noted both the doctor's assurances that the plaintiff's symptoms were temporary and the fact that the symptoms were not "so clearly unrelated to the procedure performed" that a reasonable person necessarily would have understood that they resulted from the doctor's malpractice. *Id.*

The court returned to the question in *Doe.* In that case, the plaintiff learned that he was HIV positive as a result of a transfusion of blood that the Red Cross had supplied. 322 Or at 506. The plaintiff thus was aware of two elements of "injury"—harm and causation. *Id.* at 508-09 He contended, however, that he neither had discovered nor reasonably should have discovered the third element—tortious conduct—until some time later. *Id.* at 509. In resolving that issue, the court explained that, given the plaintiff's knowledge that he was HIV positive as a result of the transfusion, a reasonable person would have inquired whether the Red Cross had acted tortiously. 322 Or at 515. The court observed, however, that there was no evidence as to what the plaintiff would have learned if he had inquired. *Id.* Without that evidence, the court held that summary judgment was not appropriate. *Id.*

Finally, in *Greene,* the court explained that the phrase "inquiry notice," which it had used in *Doe,* obscured

rather than advanced the analysis. 335 Or at 123. The court clarified the relevant standard:

> "The period of limitations in [ORS 12.110(4)] commences from the earlier of two possible events: (1) the date of the plaintiff's actual discovery of injury; or (2) the date when a person exercising reasonable care should have discovered the injury, including learning facts that an inquiry would have disclosed. In neither of those circumstances does the period of limitations begin to run from the plaintiff's discovery of facts that serve only to trigger a duty to inquire about whether an injury has occurred. Even if a plaintiff acquires information about a surgical complication that only would cause a reasonable person to inquire whether legally cognizable harm has occurred, the period of limitations would commence at some later point when, after inquiry, the facts reasonably should disclose the existence of an actionable injury."

*Id.* (emphasis deleted). As in *Gaston*, the court was careful to consider the particular facts of the case in determining whether it could hold, as a matter of law, that the plaintiff in the exercise of reasonable care should have discovered the existence of an actionable injury.

The decisions in *Gaston* and *Greene* teach that, in applying ORS 30.907(1), the question whether plaintiff, in the exercise of reasonable care, should have discovered that he had an "asbestos-related disease" and "the cause thereof" will turn, among other things, on the evidence regarding the nature of that disease, the degree to which the disease remains latent after exposure, and the difficulty in diagnosing asbestos as the cause of plaintiff's conditions. Turning to that inquiry, we note that the evidence in this case falls into two time periods.

From 1986 to 1995, plaintiff repeatedly sought treatment for his pulmonary problems. Plaintiff did not sleep on his rights during that period or fail to inquire about the cause of his pulmonary problems. Rather, as explained above, a reasonable juror could find that plaintiff had engaged in a reasonable inquiry; he repeatedly sought medical treatment for his pulmonary problems. His doctors, however, did not

diagnose him during that period as having an asbestos-related disease. A reasonable juror could find that, if plaintiff's doctors could not identify asbestos as the cause of his pulmonary disease, plaintiff was not unreasonable in failing to discover what his doctors could not.

■■ The period from 1995 to 2000 presents a different issue. The record does not disclose that plaintiff sought any treatment during that period until Schaumberg diagnosed him with an asbestos-related disease in 2000. The record, however, also does not disclose that plaintiff suffered any change in his symptoms during that period, and a reasonable juror could find on this record that nothing occurred during that period to cause plaintiff to seek additional medical advice.[12] Alternatively, even if a reasonable person would have continued to inquire after 1995, the record does not disclose what a further inquiry would have revealed. In that respect, this case is no different from *Doe*. Without evidence of what plaintiff would have learned if he had inquired, we cannot say that he should have discovered that he had an asbestos-related disease more than two years before he brought this action. *See Doe*, 322 Or at 515 (holding that, without any evidence as to what Doe would have discovered if he had inquired, defendant was not entitled to summary judgment on its statute of limitations defense).

The Court of Appeals correctly held that, on this record, a reasonable juror could find that plaintiff neither actually discovered nor, in the exercise of reasonable care, should have discovered that he had an asbestos-related disease until April 2000. It follows that defendant was not entitled to summary judgment on its statute of limitations defense.

The decision of the Court of Appeals is affirmed. The judgment of the circuit court is reversed, and the case is remanded to the circuit court for further proceedings.

---

[12] Because the statute of limitations is an affirmative defense, defendant has the burden of persuasion on that issue at trial. *See Nelson v. Hughes*, 290 Or 653, 664-65, 625 P2d 643 (1981) (stating proposition). On summary judgment, a party has the burden to produce evidence on an issue as to which it has the burden of persuasion at trial. ORCP 47 C. It follows that, if no evidence exists on an issue of fact that is material to defendant's statute of limitations argument, that omission defeats that argument.