Argued and submitted May 11, 2022, reversed and remanded April 5, 2023

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

AMELIA DAWN REDDING,
*Defendant-Appellant.*

Coos County Circuit Court
20CR20367; A174836

528 P3d 314

Defendant appeals a judgment of conviction for driving under the influence of intoxicants, ORS 813.010. In her sole assignment of error, she challenges the trial court's denial of her motion to suppress evidence that she was driving while under the influence of intoxicants, contending that that evidence was obtained during an allegedly unlawful traffic stop for an unsignaled lane change. *Held*: Defendant's conduct did not constitute "changing lanes" within the meaning of ORS 811.375(1)(b), and therefore the traffic stop was not supported by probable cause. Consequently, the trial court erred in denying defendant's motion to suppress.

Reversed and remanded.

Megan Jacquot, Judge.

Stacy M. Du Clos, Deputy Public Defender, argued the cause for appellant. Also on the briefs was Ernest G. Lannet, Chief Defender, Criminal Appellate Section, Office of Public Defense Services.

Robert M. Wilsey, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Tookey, Presiding Judge, and Egan, Judge, and Kamins, Judge.

EGAN, J.

Reversed and remanded.

**EGAN, J.**

Defendant appeals a judgment of conviction for driving under the influence of intoxicants, ORS 813.010. In her sole assignment of error, she challenges the trial court's denial of her motion to suppress evidence that she was driving while under the influence of intoxicants, contending that that evidence was obtained during an allegedly unlawful traffic stop for an unsignaled lane change. *See* ORS 811.375(1)(b) (requiring that a driver "give an appropriate signal continuously during not less than the last 100 feet traveled by the vehicle before changing lanes"). The traffic stop occurred after the lane in which defendant was driving widened to two lanes, and defendant failed to signal to indicate which of the two lanes she would use before moving her vehicle to the right and proceeding in the right lane. Defendant contends that her conduct did not constitute "changing lanes" within the meaning of ORS 811.375(1)(b), and therefore the traffic stop was not supported by probable cause. We agree with defendant that the stop was not supported by probable cause. Consequently, we conclude that the trial court erred in denying defendant's motion to suppress. We reverse and remand.[1]

We review a trial court's denial of a motion to suppress for legal error. *State v. Maciel-Figueroa*, 361 Or 163, 165, 389 P3d 1121 (2017). We are bound by the trial court's factual findings if there is constitutionally sufficient evidence in the record to support them. *Id*. at 165-66. When the trial court did not make express findings and there is evidence from which the trial court could have found a fact in more than one way, we will presume that the trial court decided the facts consistently with the trial court's ultimate conclusion. *Id*. at 166. We state the facts consistent with those standards.

Defendant was travelling southbound on Highway 101 when the road widened and the single southbound lane

---

[1] Defendant also contends that the trial court erred in denying her motion to suppress, because "the state failed to prove that defendant voluntarily consented to a breath test." Because we conclude that the officer who stopped defendant lacked probable cause, we do not address whether defendant's consent to the breath test was voluntary.

that defendant was traveling in split into two lanes. Within the transitionary stretch of the road—where it had begun widening, but before lane markers began indicating the presence of two lanes—defendant moved toward the right side, without signaling a lane change. As defendant moved to the right side, the lane in which she was driving was bounded on the left side by a yellow center line and on the right side by a white fog line. Had defendant not moved toward the right side during the transitionary stretch where the lane had begun widening, her natural course of travel would have resulted in her traveling into what eventually became the left-most lane of the southbound highway. Defendant's driving was observed by an officer who, shortly thereafter, stopped defendant, believing that defendant had committed a traffic violation under ORS 811.375(1)(b) for failure to signal a lane change. As a result of evidence gathered during the stop, defendant was charged with driving under the influence of intoxicants.

In the trial court, defendant moved to suppress the evidence obtained as a result of the stop, arguing that the officer lacked probable cause to stop her because "there was no lane change made." The trial court disagreed, determining that the officer had probable cause to stop defendant for violating ORS 811.375(1)(b). Following the trial court's ruling, defendant entered a conditional guilty plea, reserving the right to appeal the court's denial of her motion to suppress. This timely appeal followed.

On appeal, defendant contends that the officer did not have probable cause to stop her when she kept right in her existing lane during the transitionary stretch before lane markers began indicating the presence of a second lane and then proceeded into the newly created right lane. Relying on our decision in *State v. Thomas*, 104 Or App 126, 129, 799 P2d 208 (1990), defendant argues that a "lane is an area of a highway designated for a particular use by a single line of vehicles, and to which specific driving duties apply." In defendant's view, to "change" lanes under ORS 811.375(1)(b), a driver must "shift or transfer in position *from* one designated area for a single line of vehicles to which specific driving duties apply and travel *into* a second designated area

for a single line of vehicles to which specific driving duties apply." (Emphasis in original.)

The state sees it differently. Relying principally on a definition of "lane" from *Webster's Third New Int'l Dictionary* (unabridged ed 2002), the state argues that a "lane" is a strip of roadway adequate to accommodate a single line of vehicles, and defendant "'changed lanes' by moving her vehicle to the right, shifting the vehicle from one strip of roadway adequate to accommodate a single line of vehicles (the left lane in which she had been travelling and in which she would have continued travelling but for her rightward movement) to another strip of roadway having that same characteristic (the right lane that opened up alongside and ahead of her), and she failed to signal as required by ORS 811.375(1)(b)." During oral argument the state agreed that, in its view, the number of lanes on a road is determined by the width of the road, and that any road wide enough for two vehicles contains two lanes.

As framed by the parties, as we understand it, the question in this case is whether there was one lane or two lanes within the transitionary stretch where the road defendant was driving on had begun widening, prior to the beginning of lane markers indicating the presence of two lanes. In defendant's view, there was only one lane, so she could not have "changed" lanes. The state's view is that, because the pavement was wide enough to accommodate more than one vehicle, it was two lanes, and defendant "changed" lanes when she moved rightward to enter the newly formed right lane. The answer to the question turns on the meaning of the word "lane" in ORS 811.375.

"In interpreting a statute, we examine the text of the statute in context, considering any relevant legislative history, to discern the legislature's intent." *State v. Street*, 317 Or App 1, 4, 505 P3d 425, *rev den*, 369 Or 705 (2022).

ORS 811.375 provides, in relevant part, that:

"(1)   A person commits the offense of unlawful or unsignaled change of lanes if the person is operating a vehicle upon a highway and the person changes lanes by moving to the right or left upon the highway when:

"*****

"(b)   The driver fails to give an appropriate signal continuously during not less than the last 100 feet traveled by the vehicle before changing lanes."

The Vehicle Code does not define "lane" and, therefore, "we look to the dictionary for further guidance."[2] *Pride Disposal Co. v. Valet Waste, LLC*, 298 Or App 751, 759, 448 P3d 680, *rev den*, 366 Or 64 (2019) (internal citation and quotation marks omitted). In *Webster's* at 1269, the most pertinent definition of "lane" appears to be "a strip of roadway adequate to accommodate a single line of vehicles." That definition provides strong textual support for the state's understanding of what constitutes a "lane" under ORS 811.375.

However, "we do not simply consult dictionaries and interpret words in a vacuum because dictionaries do not tell us what words mean, only what words can mean, depending on their context and the particular manner in which they are used." *Pride Disposal Co.*, 298 Or App at 759 (internal quotation marks omitted). Important to our analysis in this case, context includes "related statutes," *State v. Klein*, 352 Or 302, 309, 283 P3d 350 (2012), and our prior construction of related statutes, *Keller v. Armstrong World Industries, Inc.*, 342 Or 23, 35, 147 P3d 1154 (2006). Two important contextual clues reveal that the legislature intended "lane," as used in ORS 811.375, to have a different meaning than that which is provided in *Webster's* and advanced by the state.

First, in *Thomas*, we concluded that ORS 811.400(1)—a related statute within the Vehicle Code—requires a driver to signal before moving from an on-street parking lane into

---

[2] We note that the Vehicle Code also does not define "change." As pertinent here, "change" means to "2 : *** b : to switch to another <he changed his seat > <official permission to ~ occupation> <the right to hold or ~ faith> <not till you ~ your attitude> : make a shift from one to another of two <forced to ~ planes by bad weather> <one does not ~ parties as he ~s tailors> <weakly changing sides in the argument>." *Webster's* at 373-74.

The parties do not dispute the meaning of "change" and we are aware of no context or legislative history that suggests the legislature intended any meaning of "change" other its ordinary meaning.

a traffic lane.[3] 104 Or App at 130. In doing so, we defined "lane," as used in ORS 811.400(1), to mean "an area of a highway designated for a particular use by a single line of vehicles, and to which specific driving duties apply." *Id.* at 129 (citing *Webster's Ninth New Collegiate Dictionary* 672 (1988)). Thus, under the definition in *Thomas*, as used in ORS 811.400(1), the number of "lanes" in a road is not measured by how many vehicles can fit side by side, as it would be in ORS 811.375 under the state's preferred definition; instead, the number of "lanes" in a road is determined by whether the space on the roadway has been "designated for a particular use by a single line of vehicles." Because we see no evidence to the contrary, we assume the legislature used the word "lane" in ORS 811.375 (the statute at issue here) consistently with its use of the word "lane" in ORS 811.400 (the statute at issue in *Thomas*). *State v. Cloutier*, 351 Or 68, 99, 261 P3d 1234 (2011) ("Although, in the abstract, there is nothing that precludes the legislature from defining the same terms to mean different things in the same or related statutes, in the absence of evidence to the contrary, we ordinarily assume that the legislature uses terms in related statutes consistently.").

Second, adopting the definition of "lane" advanced by the state—which, as noted, finds strong support from the pertinent *Webster's* definition of "lane"—would create inconsistency with other aspects of the Vehicle Code. For example, ORS 814.240 creates the offense of "motorcycle or moped unlawful passing in a lane with a vehicle" and provides that "a motorcycle operator or moped operator commits the offense of motorcycle or moped unlawful passing in a lane with a vehicle if the operator *** [o]vertakes and *passes in the same lane* occupied by the vehicle the operator is overtaking, unless the vehicle being passed is a motorcycle or a moped." (Emphasis added.) That statute demonstrates that

---

[3] At the time *Thomas* was decided, ORS 811.400 provided:

"A person commits the offense of failure to use an appropriate signal for a turn, lane change or stop if the person is operating a vehicle that is turning, changing lanes, stopping or suddenly decelerating and the person does not make the appropriate signal under ORS 811.395 by use of signal lamps or hand signals."

ORS 811.400 (1989), *amended by* Or Laws 1995, ch 383, § 66; Or Laws 2001, ch 464, § 6.

circumstances will exist when two vehicles—a motorcycle or moped, on the one hand, and a vehicle that is not a motorcycle or moped, on the other—will fit into the same "lane." That suggests to us that the legislature did not intend "lane" to be defined solely with reference to how many vehicles can fit side by side, as the state suggests.[4]

In our view, that textual and contextual inquiry resolves the question presented concerning the meaning of "lane" in ORS 811.375 as we resolved it in *Thomas* with respect to ORS 811.400—a lane is "an area of a highway designated for a particular use by a single line of vehicles, and to which specific driving duties apply." 104 Or App at 129 (internal citation omitted). That is, the legislature intended that "lane" in ORS 811.375 has the same meaning as "lane" in ORS 811.400. Although the state has brought to our attention certain legislative history concerning ORS 811.375, we do not find it helpful, and we are not aware of legislative history that would call our conclusion regarding the meaning of "lane" in ORS 811.375 into question. *See* ORS 174.020(3) ("A court may limit its consideration of legislative history to the information that the parties provide to the court.").

Having construed "lane" as used in ORS 811.375, we conclude that the trial court erred in denying defendant's motion to suppress, because defendant did not make an illegal lane change and was therefore stopped without probable cause. As noted above, defendant was traveling in a single southbound lane. The lane widened before splitting into two marked lanes. The widened area in which defendant drove—before lane markers indicated the presence of an additional lane—was "an area of a highway designated for a particular use by a single line of vehicles." *Thomas*, 104 Or App at

---

[4] We note as well that the legislature has stated that its policy in enacting the Vehicle Code is "[t]o provide maximum safety for all persons who travel or otherwise use the public highways of this state." ORS 801.020(11)(a); *see DLCD v. Jackson County*, 151 Or App 210, 218, 948 P2d 731 (1997), *rev den*, 327 Or 620 (1998) (statements of general policy in statutes and rules provide instructive context); *Thomas*, 104 Or App at 130 (looking to ORS 801.020(11)(a) to interpret other provisions in the Vehicle Code). We do not understand how the state's definition of "lane"—under which, during a transitory period before lane markers indicated the presence of two lanes, two lanes would exist the moment the pavement became wide enough to fit two vehicles side by side—would further the legislative intent underlying the Vehicle Code of providing for "maximum safety."

129. That is, even assuming that the widened portion of the southbound lane in question could have accommodated two vehicles as the state argues, the lane markers (namely, the centerline and fog line) indicated that the widened portion was only meant for use by "a single line of vehicles." Put another way, defendant moved to the right on the highway within a single wide lane and then naturally entered a new lane by traveling straight from that position—she never "changed" from one "lane" to another "lane" as contemplated by ORS 811.375(1)(b).[5]

Consequently, the facts as the officer perceived them did not constitute a violation of ORS 811.375(1)(b), and it follows that the officer did not have probable cause to stop defendant. *See, e.g.*, *State v. Derby*, 301 Or App 134, 138, 455 P3d 1009 (2019) ("For an officer's belief to be objectively reasonable, the facts, as the officer perceives them, must actually constitute a traffic violation."). We therefore conclude that the trial court erred in denying defendant's motion to suppress. We reverse and remand the judgment of conviction so that defendant may decide whether to withdraw her guilty plea.

Reversed and remanded.

---

[5] Although lane markers in this case indicated when the single lane had split into two lanes, there may be circumstances where an area of a highway might have two lanes but not be divided by lane markers.