Argued and submitted February 21, Banks High School, Banks; affirmed June 13, 2007

THE UNION BANK OF CALIFORNIA, N.A.,
as personal representative of the Estate of Morris Nagl,
on behalf of Bruce Nagl, Corrina Nagl, and Philip Nagl,
*Plaintiff-Appellant,*

*v.*

COPELAND LUMBER YARDS, INC.,
an Oregon corporation;
Crown Cork & Seal Company, Inc.,
a Pennsylvania corporation,
individually and as successor-in-interest to
Mundet Cork Corporation;
Hiway Tire Co.,
an Oregon corporation;
Honeywell International, Inc.,
a Delaware corporation,
formerly known as Allied Signal, Inc.
and as Allied-Signal, Inc.,
individually and as successor-in-interest to
The Bendix Corporation,
Bendix Products Automotive Division,
Bendix Products Division - Bendix Aviation Corp.,
Bendix Home Systems,
Allied Corporation,
Allied Chemical Corporation,
Honeywell, Inc.,
Honeywell Controls,
General Chemical Corporation,
FRAM, Friction Materials of Los Angeles,
EM Sector Holdings, Inc.,
Universal Oil Products Company,
Boylston Corporation,
Ehrhart & Associates, Inc.,
Ehrhart & Arthur, Inc.,
and Garrett Air Research Corp.;
Knez Building Materials Co.,
an Oregon corporation,
individually and as successor-in-interest to
Gray Building Materials, Inc.;
The Goodyear Tire & Rubber Company,
an Ohio corporation,

individually and as successor-in-interest to
Goodyear Aerospace Corp.,
Lockheed Martin Tactical Systems, Inc.,
Loral Corporation, and Aircraft Braking Systems Corp.;
and Weygandt Auto Parts, Inc.,
an Oregon corporation,
*Defendants,*

*and*

DOWMAN PRODUCTS, INC.,
a California corporation,
*Defendant-Respondent.*

Multnomah County Circuit Court
050707909; A131135

160 P3d 1032

Robyn L. Stein argued the cause for appellant. On the opening brief were Scott Niebling and Brayton Purcell LLP. With them on the reply brief was James Shadduck.

Jay W. Beattie argued the cause for respondent. With him on the brief was Lindsay, Hart, Neil & Weigler, LLP.

Before Landau, Presiding Judge, and Schuman and Ortega, Judges.

LANDAU, P. J.

**LANDAU, P. J.**

Oregon's wrongful death statute, ORS 30.020(1), provides that the decedent's personal representative may bring an action for wrongful death "if the decedent might have maintained an action, had the decedent lived, against the wrongdoer for an injury done by the same act or omission." The question in this case is the meaning of that provision—specifically, whether a personal representative can bring a wrongful death action when the decedent already recovered damages for personal injury based on the same act or omission that is the basis for the wrongful death claim. The trial court concluded that, if decedent already recovered damages for the same act or omission, the statute precludes a wrongful death action, because decedent could not have maintained the action had he lived. We agree and affirm.

The relevant facts are not in dispute. Morris Nagl worked as a floor installer from 1953 to 1991. During that time, he was exposed to asbestos-containing building materials, including joint compound, filler, and leveling and patching products. In 2001, Nagl was diagnosed with an asbestos-related disease. In 2003, he was diagnosed with mesothelioma.

In 2004, Nagl and his wife, Donna, brought a personal injury action against a number of companies engaged in the manufacture, distribution, and sale of asbestos-containing materials. Defendant Dowman Products, Inc., (Dowman) was among those companies named as a defendant. The complaint alleged claims of negligence, product liability, and loss of consortium, based on Nagl's exposure to asbestos-containing products that Dowman manufactured, delivered, or sold. The Nagls settled with other defendants and then obtained a verdict against Dowman for a total of $659,720.87, consisting of $274,720.87 in economic damages to Nagl, $350,000 in noneconomic damages to Nagl, and $35,000 in loss of consortium damages to his wife.

Approximately five months after the judgment was entered in the personal injury action, Nagl died.

In 2005, plaintiff, the personal representative of Nagl's estate and Nagl's three surviving children, initiated

this wrongful death action against, among others, Dowman. The complaint alleges claims of negligence and product liability, based on Nagl's exposure to asbestos-containing products that Dowman manufactured, delivered, or sold. The prayer of $2.7 million includes medical expenses to Nagl that were not covered by the personal injury judgment, burial expenses, and damages for loss of consortium to Nagl's children.

Dowman moved for summary judgment on the ground that the wrongful death action was not permitted by statute. According to Dowman, the statute permits a wrongful death action only "if the decedent might have maintained an action, had the decedent lived, against the wrongdoer for an injury done by the same act or omission." In this case, Dowman argued, Nagl could *not* have brought the action, had he lived. Because Nagl already had brought a successful action for damages against the same wrongdoer (Dowman) for injury done by the same act or omission (injury produced by exposure to asbestos-containing products), Nagl would have been precluded from bringing a second claim for the same wrongdoing, as a matter of law. Because Nagl could not have brought the action, under the plain terms of the statute, neither can plaintiff.

Plaintiff responded that it makes no sense to read the statute to condition a personal representative's right to initiate a wrongful death action on the decedent's ability to bring the claim, had the decedent lived. According to plaintiff, a wrongful death action is entirely independent of any claims that the decedent himself could have brought.

The trial court agreed with Dowman that the wrongful death statute itself precluded plaintiff from bringing this action and entered judgment accordingly.

On appeal, plaintiff assigns error to the trial court's decision to grant Dowman's motion for summary judgment. In support of the assignment, plaintiff reprises its argument that Nagl's successful prosecution of his personal injury claim against defendant does not preclude Nagl's estate from pursuing its own claim, even if both claims arise out of the same acts or omissions. Plaintiff asserts that the portion of

the statute on which the trial court relied—permitting a wrongful death action only "if the decedent might have maintained an action, had the decedent lived"—is no bar in this case. In plaintiff's view, Nagl "not only 'might have' maintained such an action while alive but he *did* so and *won*." (Emphasis in original.)

Dowman responds that plaintiff is ignoring the wording of the statute, which requires that the decedent have been able to have brought the action "had the decedent lived." That wording, Dowman contends, makes clear that the determinative issue is whether decedent could have brought the action *at the time of death*. In this case, Nagl could not have done so, having already recovered on his personal injury claim against defendant for the same wrongdoing.

Plaintiff rejoins that we should read the statute to require only that the decedent have been able to have brought the claim *at any time*, and not at the time of death. Any other reading of the statute, plaintiff complains, "produces an absurd result" that "defies the statutory language, policy, and history."

■ In Oregon, an action for wrongful death is regarded as exclusively statutory in nature. *Storm v. McClung*, 334 Or 210, 222 n 4, 47 P3d 476 (2002) ("Since at least 1891, this court has adhered to the view that no right of action for wrongful death existed at common law."); *Groth v. Hyundai Precision and Ind. Co.*, 209 Or App 781, 801, 149 P3d 333 (2006) ("A well-established line of Oregon cases holds that there was no right of action for wrongful death at common law and that wrongful death claims are purely statutory."). To be sure, as the Oregon Supreme Court itself has noted, there is reason to doubt the widely held view that there was no common-law action for wrongful death. *Storm*, 334 Or at 222 n 4.[1] Still, to date, the court has not had occasion to

---

[1] A number of nineteenth-century American courts declared that no right of action for wrongful death existed at common law. *See, e.g., Putman v. Southern Pacific Co.*, 21 Or 230, 231-32, 27 P 1033 (1891). Usually, the American courts cited for that proposition an English decision, *Baker v. Bolton*, 1 Camp 493, 170 Eng Rep 1033 (Nisi Prius 1808). The problem is that a number of scholars have come to believe that *Baker* was wrong in that regard. *See, e.g.,* T.A. Smedley, *Wrongful Death—Bases of the Common Law Rules*, 13 Vand L Rev 605, 614 (1960) (noting

reconsider the matter. *See, e.g., Juarez v. Windsor Rock Products, Inc.*, 341 Or 160, 169, 144 P3d 211 (2006) (noting the issue but determining that it was not necessary to resolve it in that case). The point is worth emphasizing, for it frames the dispute before us, which is one not of policy or of developing common-law principles, but of statutory construction.

■     As such, our decision rests on familiar principles that apply to the interpretation of statutes. We attempt to discern the intentions of the legislature that enacted the statute into law by reference to the statute's text and, if necessary, its history and other aids to construction. *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610-12, 859 P2d 1143 (1993). In our examination of the statute's text, we consider prior judicial construction of it. *Martin v. Board of Parole*, 327 Or 147, 156, 957 P2d 1210 (1998). Prior Supreme Court construction of a statute, in fact, becomes part of the statute as if written into the text of the statute itself. *Stephens v. Bohlman*, 314 Or 344, 350 n 6, 838 P2d 600 (1992).

■     Oregon's wrongful death statute provides, in part:

> "When the death of a person is caused by the wrongful act or omission of another, the personal representative of the decedent * * * may maintain an action against the wrongdoer, if the decedent might have maintained an action, had the decedent lived, against the wrongdoer for an injury done by the same act or omission."

ORS 30.020(1). The statute has been amended on a number of occasions over the years, but the portion relevant to this case has remained essentially unchanged since its original enactment as part of the Deady Code of 1862. *See Storm*, 334 Or at 222 n 4. The Supreme Court has explained that, although the effect of the statute is to create a new cause of action distinct from one that the decedent had while alive, *Hansen v. Hayes*, 175 Or 358, 398, 154 P2d 202 (1944), the

---

that *Baker* has been "widely criticized as embodying a careless overstatement of the law"). In the meantime, however, *Baker* was cited by a number of state courts in this country. *See Goheen v. General Motors Corp.*, 263 Or 145, 150-51, 502 P2d 223 (1972) (reviewing cases). That creates an interesting question as to precisely what was the state of the "common law" in the mid-nineteenth century, given the fact that so many American courts perpetuated *Baker*'s overstatement of the law. We do not, however, need to resolve that matter in this case.

new cause of action remains "derivative" of the decedent's rights. *Smothers v. Gresham Transfer, Inc.*, 332 Or 83, 127, 23 P3d 333 (2001). The statute, in effect, "places a decedent's personal representative in the decedent's shoes, imputing to the personal representative whatever rights, and limitations to those rights, that the decedent possessed." *Storm*, 334 Or at 223.

The statute also imposes a limitation on the personal representative's authority to bring an action. That limitation is that the decedent must have been able to bring an action for the same wrongful conduct, "had the decedent lived." ORS 30.020(1). It is the meaning of that provision that is in dispute in this case.

The phrasing of the statute suggests that the relevant time for determining whether a decedent might have brought such an action is at the time of death. The statute provides that the determinative issue is whether decedent might have brought the action, "had the decedent lived," in other words, had the decedent not died. Grammarians refer to that phrasing as "past hypothetical conditional," which is understood to suggest what might have happened, but did not actually happen—in this case, that decedent might have survived, but did not survive. *See generally* Randolph Quirk, Stanley Greenbaum, Geoffrey Leech, and Jan Svartvik, *A Comprehensive Grammar of the English Language* 1010-12 (1985). The key event, in other words, is the time of death.

The same conclusion seems to follow from the derivative nature of wrongful death claims. If, as the Supreme Court has explained, the claim is derivative of the decedent's rights and the estate steps "in the decedent's shoes," *Storm*, 334 Or at 223, then it would follow that the authority of the estate to bring a claim would depend on the nature of the decedent's rights at the time of death.

Consistent with the foregoing, in two decisions from early in the previous century, the Supreme Court has construed ORS 30.020(1) to refer to the extent to which a decedent might have brought a claim at the time of death. First, in *Kosciolek v. Portland Ry., L. & P. Co.*, 81 Or 517, 160 P 132 (1916), the decedent was injured in a street-car accident. The

decedent brought an action for negligence against the street-car company for his injuries. The case was settled, and the decedent recovered a sum of money in satisfaction of his claim. Some months later, the decedent died, and his surviving wife brought suit under the wrongful death statute for damages arising out of the same street-car accident. *Id.* at 518-19. The street-car company obtained a dismissal of the wrongful death claim for failure to state a claim, and the Supreme Court affirmed. The court explained that, by the time of the decedent's death, the decedent already had settled his claim against the street-car company, leaving no further basis for a wrongful death claim. "[I]t would be unreasonable to hold," the court commented, "that the defendant, after fairly compensating the injured man for the negligent wrong inflicted upon him, should be compelled to search out all others of his relatives and litigate or settle with them." *Id.* at 524.

Second, in *Piukkula v. Pillsbury Flouring Co.*, 150 Or 304, 42 P2d 921 (1935), the decedent became ill as a result of exposure to flour dust during many years of work for Pilllsbury. He sued Pillsbury, but Pillsbury demurred on statute of limitations grounds. But, before that matter was finally resolved, the decedent died, and the case was dismissed. *Id.* at 308-09. The decedent's estate then brought an action against Pillsbury under the wrongful death provisions of the Employers' Liability Act (ELA),[2] as it then existed. Pillsbury moved to dismiss the action on statute of limitations grounds, and the trial court granted the motion. The decedent's estate appealed, arguing that its claim was not dependent on the viability of the decedent's claim at the time of his death but, instead, consisted of an entirely separate claim. Pillsbury argued that the claim of the estate depended on the viability of the decedent's claim at the time of his death.

The Supreme Court agreed with Pillsbury. The court explained that the wrongful death provisions of the ELA were "akin" to the state's wrongful death statute. The court

---

[2] We are aware of the fact that the current preference is to refer to the statute as the "Employer Liability Law." *See Woodbury v. CH2M Hill, Inc.*, 335 Or 154, 157 n 1, 61 P3d 918 (2003). We refer to the "Employers' Liability Act" in describing *Piukkula*, however, because that is how the Supreme Court referred to the enactment in that case. 150 Or at 309.

then commented, after surveying a variety of wrongful death cases that,

> "[b]y the great weight of authority * * * where the statute in effect gives a remedy to recover damages where the death of a person is caused by the negligent or wrongful act of another, such remedy depends upon the existence in the decedent, *at the time of death*, of a right of action to recover damages for such injury[.]"

*Id.* at 314 (quoting Annotation, *Release by, or Judgment in Favor of, Person Injured as Barring Action for his Death*, 39 ALR 579 (1925); emphasis added). In that regard, the court noted that its prior decisions were consistent with that general rule. In particular, the court noted, its decision in *Kosciolek* made clear that a wrongful death action cannot be maintained if the decedent had settled his or her claim before the time of death. *Id.* at 316.

Turning to the argument of the decedent's estate that the statute created an independent claim, the court agreed, but only in part. Referring explicitly to both the wrongful death statute and the ELA, the court stated that "our legislation * * * does not merely revive the cause of action, if any, possessed by the deceased, but * * * creates a new right of action." *Id.* at 318. At the same time, the court cautioned, although the legislation creates a new right of action, "the new right is dependent upon the possession by the deceased of a cause of action at the time of his death." *Id.*

We are aware of no more recent decisions of the court suggesting that either *Kosciolek* or *Piukkula* no longer remain good law. To the contrary, in at least one subsequent case, the Supreme Court expressly reaffirmed its decision in *Piukkula. Hansen*, 175 Or at 398 ("We adhere to the ruling in that case.").[3] Both decisions make clear that the relevant

---

[3] Plaintiff argues that, notwithstanding *Hansen*'s express reaffirmation of *Piukkula, Hansen* actually supports its contention that a decedent's prior judgment does not bar a subsequent wrongful death action. Plaintiff misreads the decision, however. In *Hansen*, the decedent died as a result of an auto accident, and his estate brought a successful wrongful death action for damages permitted under the statute. *After that*, the decedent's surviving spouse brought an action for unpaid medical expenses. The question in *Hansen* was whether the spouse could recover those expenses. The court held that, because the estate could not recover the medical expenses in the wrongful death action, that action was not a bar to her subsequent action to recover them. 175 Or at 396-98. *Hansen* thus was a straightforward case of preclusion—if the medical expenses had been recoverable in the wrongful

question is whether the decedent might have brought a claim *at the time of death*. Unless the answer to that question is affirmative, the estate can assert no wrongful death claim arising out of the same act or omission.

We note also that the Supreme Court's reading of the Oregon wrongful death statute in those two cases is consistent with what is widely regarded as the traditional and dominant view of the issue. *See, e.g., Kessinger v. Grefco, Inc.*, 251 Ill App 3d 980, 987, 623 NE2d 946, 951 (1993) ("The vast majority of other jurisdictions having legislation including the phrase 'if death had not ensued' have similarly held a settlement by the injured party or a suit reduced to judgment during the lifetime of the injured party barred a later suit by the next of kin."); *see also Brown v. Pine Bluff Nursing Home*, 359 Ark 471, 474, 199 SW3d 45, 48 (2004); *Xu v. Gay*, 257 Mich App 263, 277, 668 NW2d 166, 174 (2003); *Varelis v. Northwestern Memorial Hosp.*, 167 Ill2d 449, 454, 657 NE2d 997, 999 (1995); *Suber v. Ohio Medical Products, Inc.*, 811 SW2d 646, 649-50 (Tex App 1991); *Variety Childrens' Hosp. v. Perkins*, 445 So2d 1010, 1011 (Fla 1983).

As the reporter of the *Restatement (Second) of Judgments* § 46, Reporter's Note (1982), comments, "The clear weight of authority is that a prior judgment for or against the decedent precludes a wrongful death action by his beneficiaries." *See also* Stuart M. Speiser & James E. Rooks, Jr., 3 *Recovery for Wrongful Death* § 15:20, 15-82 (4th ed 2005) (noting traditional rule that "if the injured party recovers damages for his fatal injuries during his lifetime, the cause of action is thereby satisfied"); Dan Dobbs, *The Law of Torts* 820 (2000) (citing rule of "most courts" that "either a settlement by the victim or a judgment for or against him will preclude the wrongful death action where death resulted from the original injury"); Fowler V. Harper, Fleming James, Jr., and Oscar S. Gray, 4 *The Law of Torts* § 24-26, 471-72 (2nd ed 1986) ("If the deceased recovered a judgment for injuries or settled and released a claim for injuries, before death, most courts hold this a bar to any action under either a survival or wrongful death statute."). The consistent rationale of those

death action, the later action would have been barred, *id.* at 378—and did not involve the statutory construction at issue in this case.

authorities is the derivative nature of the wrongful death claim. As one leading commentator explains,

> "The argument for this position is summed up by describing the wrongful death suit as derivative of the deceased's own rights. If the deceased had no right to sue at her death, or would have had none had she survived, then survivors have no wrongful death claim."

Dobbs, *The Law of Torts* at 820.

Plaintiff notes that courts in several states and the United States Supreme Court have reached a contrary conclusion and that we should follow those decisions as "better reasoned." Plaintiff is correct that there has developed a minority view on the question whether a decedent's prior settlement or judgment precludes a later wrongful death action arising out of the same wrongdoing. The United States Supreme Court, for example, concluded in *Sea-Land Services, Inc. v. Gaudet*, 414 US 573, 579-95, 94 S Ct 806, 39 L Ed 2d 9 (1974), that a decedent's prior settlement or judgment does not bar a subsequent wrongful death action under a federal maritime statute. Several state courts have reached a similar conclusion with respect to their state wrongful death statutes. *See, e.g., Alfone v. Sarno*, 87 NJ 99, 108-24, 432 A2d 857, 861-63 (1981), *overruled in part on other grounds by La Fage v. Jani*, 166 NJ 412, 438, 766 A2d 1066, 1070-76 (2001); *Schmidt v. Moncrief*, 151 P2d 920, 921-22 (Ok 1944); *Rowe v. Richards*, 151 NW 1001, 1007 (SD 1915).

The consistent rationale for those cases, however, is that wrongful death statutes create a completely independent action that is not merely derivative of the rights of the decedent. *See* Dobbs, *The Law of Torts* at 820 (discussing cases). As we have noted, in Oregon, the Supreme Court has long regarded wrongful death claims to be derivative of the decedent's rights. *Storm*, 334 Or at 223; *Smothers*, 332 Or at 127. Moreover, and apart from that, it must be remembered that, as we emphasized at the outset of this opinion, the question before us is not one of better reasoning in the abstract, but one of statutory construction. That means that we are required to determine what the legislature most likely intended when it enacted Oregon's wrongful death statute in

1862, in light of the wording of the statute as it has been construed by the courts since enactment. Plaintiff offers no evidence that the Oregon legislature intended to adopt the minority view when it enacted the statute, and we are aware of none. Nor has it explained how such a view can be reconciled with Oregon case law construing the statute.

We conclude that Nagl's successful prosecution of a personal injury claim for exposure to asbestos-containing products bars plaintiff from bringing another claim on behalf of Nagl's estate and children on the basis of the same exposure because plaintiffs cannot satisfy the requirement of the wrongful death statute that, Nagl, had he not died, might have brought the claim. The trial court therefore did not err in granting Dowman's motion for summary judgment.

Affirmed.