Argued and submitted July 9, reversed and remanded October 8, 2008

Roxie HOBART,
as Personal Representative for
the Estate of Mabel F. Hobart,
*Plaintiff-Appellant,*

*v.*

Jack L. HOLT
and J. H. S. O. Corporation,
an Oregon corporation,
*Defendants-Respondents.*

Clackamas County Circuit Court
CV06120780; A136658

194 P3d 820

Robert J. Miller, Sr., argued the cause for appellant. With him on the briefs was Moomaw, Miller & Hildebrand LLP.

Stephen G. Leatham argued the cause for respondents. With him on the brief was Heurlin, Potter, Jahn, Leatham & Holtmann, P.S.

Before Haselton, Presiding Judge, and Rosenblum, Judge, and Riggs, Senior Judge.

HASELTON, P. J.

## HASELTON, P. J.

Plaintiff, personal representative of the estate of Mabel F. Hobart (decedent), appeals, challenging the trial court's grant of summary judgment in favor of defendants, Jack L. Holt and J.H.S.O. Corporation, on plaintiff's wrongful death claims arising out of decedent's vaccine-related death, which occurred after she received an influenza vaccination administered by defendant Holt, an employee of defendant J.H.S.O. Defendants moved for summary judgment, asserting that the National Childhood Vaccine Injury Act of 1986 (Vaccine Act), 42 USC sections 300aa-1 to 300aa-34,[1] bars plaintiff's state law claims and, alternatively, that Oregon's wrongful death statute, ORS 30.020, prohibits plaintiff's derivative claims because the Vaccine Act would have barred decedent from maintaining an action had she lived. The trial court granted defendants' motion. We conclude that (1) the Vaccine Act does not bar family members of a person who has sustained a vaccine-related death from filing a civil action seeking damages for their own injuries; and (2) because, at the time of her death, decedent might have maintained an action against defendants for the conduct that caused her death, plaintiff has valid derivative claims under ORS 30.020(1). Consequently, we reverse and remand.

Summary judgment is proper only if the "pleadings, depositions, affidavits, declarations and admissions on file show that there is no genuine issue as to any material fact * * *." ORCP 47 C. Here, the parties agree as to the material facts. Consequently, their dispute, and our analysis, is limited to the proper legal significance of the following uncontroverted facts.

On December 30, 2004, decedent, who was 84 years old, received an influenza vaccination administered by defendant Holt while he was working within the scope of his employment for defendant J.H.S.O. Within two minutes of

---

[1] For convenience and cogency, when discussed within the text, Vaccine Act sections will be referenced without the preceding "42 USC § 300aa."

the vaccination, decedent experienced an immediate ventricular fibrillation secondary to an anaphylactic reaction. Decedent went into a coma and died five days later, without regaining consciousness.

Plaintiff, as personal representative of decedent's estate, filed a petition in the United States Court of Federal Claims, seeking compensation on behalf of decedent under the National Vaccine Injury Compensation Program (Program), part of the Vaccine Act.[2] Based on a recommendation by the Secretary of the Department of Health and Human Services, a special master awarded decedent's estate $250,000. Decedent's estate elected to accept that judgment. As devisees under decedent's will and sole heirs at law of decedent, each of decedent's four surviving children inherited equal shares of the $250,000 award.

Plaintiff then filed a wrongful death action in Oregon state court, for the benefit of decedent's four surviving children, seeking damages in an amount not to exceed $500,000 for loss of society, companionship, and services of decedent. Defendants moved for summary judgment, contending that, because decedent's estate had elected to accept the judgment issued under the Program, the Vaccine Act— and, specifically, section 11(a)(2)(A) of the Vaccine Act— barred plaintiff's subsequent wrongful death action in state court. At oral argument on the motion, defendants raised an alternative argument—*viz.*, that the terms of Oregon's wrongful death statute, ORS 30.020(1), barred the prosecution of this action. Specifically, invoking *Union Bank of California v. Copeland Lumber Yards*, 213 Or App 308, 160 P3d 1032 (2007), defendants contended that (1) under Oregon's wrongful death statute, a personal representative cannot maintain an action based on the death-producing conduct unless the decedent could have maintained an action had she lived; (2) because decedent's estate accepted the judgment issued under the Program, decedent could not have maintained an action had she lived; consequently, (3) plaintiff's claims were precluded.

---

[2] We describe the operation of the Vaccine Act in detail below. *See* 222 Or App at 554-57.

Plaintiff responded that the Vaccine Act does not bar the family members of a person who suffered a vaccine-related death from bringing a tort action to obtain compensation for their own injuries. Further, unlike the decedent in *Union Bank of California*, who was precluded at the time of his death from maintaining a tort action against the defendant, 213 Or App at 320, plaintiff here was not so precluded at the time of her death—and, by extension, the plaintiff personal representative cannot be derivatively precluded.

The trial court, without amplification, granted defendants' motion.

On appeal, plaintiff argues that the trial court erred in granting defendants' motion for summary judgment, because neither the Vaccine Act nor Oregon's wrongful death statute precludes plaintiff's state law wrongful death claims. Defendants largely reiterate their contentions made before the trial court. For the reasons stated below, we agree with plaintiff.

■    We begin with the Vaccine Act. The Vaccine Act provides a special program under which compensation may be paid for a vaccine-related injury or death. 42 USC § 300aa-10 (establishing the Program). In *Schafer v. American Cyanamid Co.*, 20 F3d 1, 2-3 (1st Cir 1994), the court, in an opinion by then-Chief Judge Breyer, cogently described the general operation of the Vaccine Act:

> "The Act establishes a special claims procedure involving the Court of Federal Claims and special masters (a system that we shall call the 'Vaccine Court'). 42 U.S.C. § 300aa-12. A person injured by a vaccine may file a petition with the Vaccine Court to obtain compensation (from a fund financed by a tax on vaccines). *Id.* § 300aa-11. He need not prove fault. Nor, to prove causation, need he show more than that he received the vaccine and then suffered certain symptoms within a defined period of time. *Id.* §§ 300aa-13, 300aa-14. The Act specifies amounts of compensation for certain kinds of harm (e.g., $250,000 for death, up to $250,000 for pain and suffering). *Id.* § 300aa-15(a)(2), (4). And, it specifies other types of harm for which compensation may be awarded (e.g., medical expenses, loss of earnings). *Id.* § 300aa-15(a).

"At the same time, the Act modifies, but does not eliminate, the traditional tort system, which Congress understood to provide important incentives for the safe manufacture and distribution of vaccines. The Act requires that a person injured directly by a vaccine *first* bring a Vaccine Court proceeding. *Id.* § 300aa-11(a)(2)(A). Then, it gives that person the choice either to accept the Court's award and abandon his tort rights (which the Act transfers to the federal government, *id.* §§ 300aa-17), or to reject the judgment and retain his tort rights. *Id.* §§ 300aa-21(a), 300aa-11(a)(2)(A)(i). (He can also keep his tort rights by withdrawing his Vaccine Court petition if the Court moves too slowly. *Id.* §§ 300aa-21(b), 300aa-11(a)(2)(A)(ii).)"

(Emphasis in original.)

At issue here is the proper construction and application of the Vaccine Act's only arguably applicable preclusion mechanism, section 11(a)(2)(A). Plaintiff contends that, while that provision precludes a later civil action by the estate of a decedent who has elected to accept a judgment issued under the Program, it does not preclude a later civil action brought on behalf of family members of such a decedent to recover for their own derivative or collateral injuries. That is, while the Vaccine Act precludes a double recovery for the decedent's own loss—*viz.*, the estate cannot recover for such loss both under the Vaccine Act and by way of a subsequent civil action—it does not apply to the recovery of loss of consortium and related damages.

We are thus faced with a question of statutory interpretation; specifically, we must determine whether Congress, when it enacted the Vaccine Act, intended to preempt the type of claim pursued here. *See Shaw v. Delta Air Lines, Inc.*, 463 US 85, 95, 103 S Ct 2890, 77 L Ed 2d 490 (1983) ("In deciding whether a federal law preempts a state statute, our task is to ascertain Congress' intent in enacting the federal statute at issue."). To determine the intended meaning of a federal statute, we examine its text and structure and, if necessary, its legislative history. *See Oregon Rev. Dept. v. ACF Industries*, 510 US 332, 339-46, 114 S Ct 843, 127 L Ed 2d 165 (1994) (examining the text, structure, and legislative history of federal enactment); *see also Northwest Airlines, Inc. v. Dept. of Rev.*, 325 Or 530, 538, 943 P2d 175 (1997) (applying

federal law); *Shaw v. PACC Health Plan, Inc.*, 322 Or 392, 398-400, 908 P2d 308 (1995) (same).

Section 11(a) of the Vaccine Act sets out the general rules for petitions for compensation under the Program. That section includes the provision at issue in this case, section 11(a)(2)(A), which states:

"No person may bring a civil action for damages in an amount greater than $1,000 or in an unspecified amount against a vaccine administrator or manufacturer in a State or Federal court for damages arising from a vaccine-related injury or death * * *, and no such court may award damages in an amount greater than $1,000 in a civil action for damages for such a vaccine-related injury or death, unless a petition has been filed * * * for compensation under the Program for such injury or death and—

"(i)(I)   the United States Court of Federal Claims has issued a judgment * * * on such petition, and

"(II)   such person elects under section 300aa-21(a)[3] of this title to file such an action, or

"(ii)   such person elects to withdraw such petition under section 300aa-21(b)[4] of this title or such petition is considered withdrawn * * *."

Further, as a matter of particular—and, here, dispositive—context, section 11(a) *"applies only to a person who has sustained a vaccine-related injury or death* and who is

---

[3] Section 21(a) provides, in part:

"After judgment has been entered by the United States Court of Federal Claims * * * the petitioner * * * shall file * * *—

"(1) if the judgment awarded compensation, an election in writing to receive the compensation or to file a civil action for damages for such injury or death, or

"(2) if the judgment did not award compensation, an election in writing to accept the judgment or to file a civil action for damages for such injury or death."

[4] Section 21(b) provides, in part:

"A petitioner * * * may submit * * * a notice in writing choosing to continue or to withdraw the petition if—

"(1) a special master fails to make a decision on such petition within the 240 days prescribed * * *, or

"(2) the court fails to enter a judgment * * * within 420 days * * * after the date on which the petition was filed."

qualified to file a petition for compensation under the Program." 42 USC § 300aa-11(a)(9) (emphasis added). A "vaccine-related injury or death" is, in turn, defined as "an illness, injury, condition, or death associated with one or more of the vaccines set forth in the Vaccine Injury Table * * *." *Id.* § 300aa-33(5).[5]

■    Read in tandem, those provisions embody two salient features of the Vaccine Act. *First*, the Program provides compensation only to persons who have themselves sustained a vaccine-related injury or death—that is, a person who actually was vaccinated or that person's legal representative.[6] Compensation under the Program does not extend to derivative losses suffered by other persons.

■    *Second*, and consistently with the Program's restricted compensatory scope, preclusion under section 11(a)(2)(A) applies only when (a) the injured person (or the legal representative of the injured person) has elected to accept a judgment under the Program, *and* (b) the injured person (or the legal representative of the injured person) subsequently brings a civil action to recover damages for that person's losses. Thus, section 11(a)(2)(A) is not preclusive where, as here, the legal representative of an injured person has accepted a judgment under the Program for the decedent's losses and a subsequent civil action seeks to recover only for the derivative loss suffered by others.

Our understanding of the scope of section 11(a)(2)(A) is buttressed by two other considerations. First, if Congress had intended to preclude civil actions for recovery of derivative losses, it could easily have done so. For example, section 22(e) of the Vaccine Act provides that "[n]o State may establish or enforce a law which prohibits an *individual* from

---

[5] A person is "qualified to file a petition" if that person, in addition to meeting several other requirements not relevant to our discussion, either (1) "sustained a vaccine-related injury," or (2) is "the legal representative of such person if such person is a minor or disabled, or the legal representative of any person who died as the result of the administration of a vaccine set forth in the Vaccine Injury Table." 42 USC § 300aa-11(b).

[6] In addition to persons actually vaccinated, the Program compensates persons whose vaccine-related injury or death is due to "contract[ing] polio, directly or indirectly, from another person who received an oral polio vaccine[.]" 42 USC § 300aa-11(c)(1)(A).

bringing a civil action against a vaccine manufacturer for damages for a vaccine-related injury or death if such civil action is not barred by this part." (Emphasis added.)[7] The use of "individual" in section 22(e) is instructive, because, if Congress had intended section 11(a)(2)(A) to sweep as broadly as defendants urge, it could have employed that term rather than the much more restrictive "person who has sustained a vaccine-related injury or death." But it did not.

Moreover, our construction of section 11(a)(2)(A) comports with the consensus among federal and state jurisdictions that, because family members of a person who has sustained a vaccine-related *injury* cannot bring claims for their own, related injuries under the Program, civil actions by such family members are not barred by the Vaccine Act. *See, e.g., Schafer*, 20 F3d at 2 (assuming that state law permits the family members of those who accept an award under the Program to bring "a tort suit to obtain compensation for their own, related, injuries, in particular, for loss of companionship or consortium[,] * * * we find nothing in the [Vaccine] Act that explicitly or implicitly bars them").[8]

It would be incongruous in the extreme to construe the Vaccine Act as permitting family members to recover in state court for their own derivative losses where the injured

---

[7] Section 22(e) is, thus, a sort of "reverse preclusion" provision—it prohibits states from precluding civil actions to a greater extent than they are precluded under the Vaccine Act.

[8] *Accord Bertrand v. Aventis Pasteur Laboratories, Inc.*, 226 F Supp 2d 1206, 1214 (D Ariz 2002) (plaintiffs' claims "for their own injuries, as parents of the injured child, are not covered by the Vaccine Act. Therefore, [they] * * * must rely on state claims"); *King ex rel. King v. Aventis Pasteur, Inc.*, 210 F Supp 2d 1201, 1213 (D Or 2002) ("The [Vaccine] Act does not prevent those * * * who have not sustained a 'vaccine-related injury,' such as a family member, from bringing a civil action in either state or federal court for compensation or psychological counseling.") (magistrate's findings and recommendations as adopted by district court); *Owens ex rel. Schafer v. American Home Prod.*, 203 F Supp 2d 748, 757 (SD Tex 2002) (parents of injured children "need not (and cannot, for that matter) file a Program petition with respect to their Individual Claims, and are consequently permitted to file such claims in this forum"); *McDonald v. Lederle Laboratories*, 841 A2d 948, 952 (NJ Super Ct App Div 2004) ("Parents are not precluded from filing an individual civil action for losses incurred by them, which cannot be recovered under the [Vaccine] Act."); *Cook v. Children's Medical Group, P.A.*, 756 So 2d 734, 741 (Miss 1999) (parents of injured child "not qualified to individually file a petition under the [Vaccine] Act. Consequently, they may bring an action in state court").

person survives, but to preclude such recovery if the injured person dies. Nothing in the Vaccine Act supports such a distinction. Indeed, at least one other court has held that family members of a person who suffered a vaccine-related *death* have viable state law claims for their own injuries. *See Rivard v. American Home Products*, 917 A2d 286, 301 (NJ Super Ct App Div 2007) (claims of parents of deceased child for punitive damages and loss of services viable in state court because Vaccine Act does not include relief for such claims).

Defendants contend, nevertheless, that plaintiff's wrongful death suit amounts to a later civil action barred by the Vaccine Act because plaintiff, the personal representative bringing this wrongful death action, is the personal representative who filed the petition under the Program. We disagree. The petition filed under the Program was on behalf of the decedent, while this wrongful death action is "for the benefit of the decedent's * * * surviving children * * *." ORS 30.020(1). Thus, although the same personal representative filed both actions in a legal representative capacity, separate interests are represented. *See, e.g., Head v. Secretary of DHHS*, 26 Cl Ct 546 (1992).

In *Head*, the mother of a child who suffered a vaccine-related death sought compensation under the Program on her daughter's behalf in a representative capacity after settling a civil claim in which the mother received $3,000 in her individual capacity. *Id.* at 546-47. In determining whether compensation under the Program was barred by section 11(a)(7),[9] the United States Claims Court[10] noted that the mother received the settlement in the prior civil action "in her *individual capacity*, representing her own personal interests, while she filed the instant petition in her capacity as the *representative* of the interests of her daughter * * *. These

---

[9] Section 11(a)(7) provides:

"If in a civil action brought against a vaccine administrator or manufacturer for a vaccine-related injury or death damages are awarded under a judgment of a court or a settlement of such action, the person who brought such action may not file a petition * * * for such injury or death."

[10] The United States Claims Court is now named the United States Court of Federal Claims, which has jurisdiction over proceedings to determine if a petitioner is entitled to compensation under the Program and, if so, the amount of such compensation. 42 USC § 300aa-12(a).

two capacities are legally distinct and do not involve actions by the 'same person.' " *Id.* at 550 (emphasis added). Relying on the limiting clause of section 11(a)(9), the court concluded that, "in applying Section 11(a)(7), instead of focusing on the identity of the legal representative, 'the person who brought [the] action' should be interpreted to refer to the person who suffered the vaccine-related injury or death." *Id.* at 550-51 (brackets in original). The United States Court of Federal Claims has also made such a distinction in applying section 11(a)(6).[11] *See, e.g., Salceda v. Secretary of DHHS*, 30 Fed Cl 316, 319 (1994) ("The focus * * * is on the 'person' who sustained the vaccine-related injury or death and not on the individual who happens to represent the interests of that person in the litigation.").

■ The analysis in *Head* (and *Salceda*) is compelling and directly applicable here. Consequently, in applying section 11(a)(2)(A), "person" refers to the person who suffered the vaccine-related injury or death and not to the legal representative of such a person or his or her estate. Thus, it is immaterial here that the same personal representative who filed the petition under the Program on decedent's behalf also filed this state court wrongful death action.[12]

Defendants also contend that any recovery by plaintiff under the Oregon wrongful death statute will amount to an impermissible double recovery, subverting the fundamental purposes of the Vaccine Act, because decedent's children, as devisees of her will, shared in the compensation paid to decedent's estate under the Program. We disagree. The $250,000 judgment was awarded to decedent's estate for decedent's losses,[13] and, again, this wrongful death action is "for the benefit of the decedent's * * * surviving children,"

---

[11] Section 11(a)(6) provides: "If a person brings a civil action after November 15, 1988 for damages for a vaccine-related injury or death associated with the administration of a vaccine before November 15, 1988, such person may not file a petition * * * for such injury or death."

[12] Presumably, even under defendants' approach, preclusion could be avoided if a substitute personal representative were appointed for purposes of prosecuting the state wrongful death action.

[13] But for the fact that they were devisees under decedent's will, decedent's surviving children would not have received any part of the monies paid under the Program to the estate.

ORS 30.020(1), for their own losses. There is no double recovery.

■    We thus conclude that, under the Vaccine Act, family members of a person who sustained a vaccine-related injury or death are not barred by the Vaccine Act from seeking and obtaining damages in state court for their own derivative injuries regardless of whether the injured person (or his or her legal representative) elects to accept a judgment under the Program. Consequently, the Vaccine Act, and particularly section 11(a)(2)(A), does not preclude this action.

■    We turn to defendants' alternative argument that Oregon's wrongful death statute, ORS 30.020(1), prohibits plaintiff's claims, even if the Vaccine Act does not. ORS 30.020(1) provides, in part:

> "When the death of a person is caused by the wrongful act or omission of another, the personal representative of the decedent, for the benefit of the decedent's * * * surviving children * * *, may maintain an action against the wrongdoer, *if the decedent might have maintained an action, had the decedent lived*, against the wrongdoer for an injury done by the same act or omission."

(Emphasis added.)

Defendants emphasize that an action brought by the decedent's surviving children under ORS 30.020(1) is derivative of the decedent's rights—and, specifically, that this action cannot be maintained unless decedent "might have maintained an action [against defendants], had [she] lived * * *." *Id.* Defendants further argue that decedent could not have maintained an action against them for her injuries had she lived because decedent's estate accepted the judgment issued under the Program, triggering preclusion (at least against decedent) under section 11(a)(2)(A).

■    Defendants are correct that the statute gives plaintiff a right that is derivative of decedent's. *Smothers v. Gresham Transfer, Inc.*, 332 Or 83, 127, 23 P3d 333 (2001); *see also Storm v. McClung*, 334 Or 210, 223, 47 P3d 476 (2002) ("[T]he wrongful death statute places a decedent's personal representative in the decedent's shoes, imputing to the personal representative whatever rights, and limitations to those

rights, that the decedent possessed."); *Kilminster v. Day Management Corp.*, 323 Or 618, 626, 919 P2d 474 (1996) ("ORS 30.020 gives plaintiff a *derivative* right" (emphasis in original)). In other words, the personal representative's authority to bring an action under the statute for the benefit of decedent's children—in this case plaintiff—is limited by the decedent's ability to have been able to bring an action for the same wrongful conduct "had the decedent lived." ORS 30.020(1).

As a matter of statutory construction, the inquiry thus reduces to the meaning of the phrase "had the decedent lived"—or, more precisely, to the proper temporal referent or "benchmark" for that phrase. If that phrase refers to the time at which this action was initiated—*i.e.*, whether the decedent could have prosecuted an action against defendants when this action was filed on January 23, 2007—this action cannot be maintained because, as of that time, the acceptance of the Program's June 2006 judgment would have precluded decedent from bringing an action of her own. Conversely, as explained below, if that phrase refers to the time of decedent's death—*i.e.*, whether decedent could have prosecuted an action against defendants on January 4, 2004—then this action can be maintained because, as of *that* time, there was no preclusion under the Vaccine Act, or otherwise, of recovery in a civil action.

*Union Bank of California*, 213 Or App at 308, is dispositive. There, we concluded that "the relevant question is whether the decedent might have brought a claim *at the time of death*. Unless the answer to that question is affirmative, the estate can assert no wrongful death claim arising out of the same act or omission." *Id.* at 317-18 (emphasis in original). *Union Bank of California* is conclusive for our purposes: The temporal benchmark is *at the time of death*.

*Union Bank of California* exemplifies the proper application of that benchmark. There, the decedent successfully prosecuted a personal injury action against the defendant, based on harm from exposure to asbestos-containing products, five months before his death. 213 Or App at 311. After his death, the decedent's estate and his surviving children brought a wrongful death action against the defendant

based on that same exposure. *Id.* at 311-12. We concluded that, because the decedent successfully prosecuted his personal injury claim before his death—and, consequently, would have been barred by claim preclusion from bringing another action at the time of his death—the plaintiffs were barred from bringing another claim based on the same exposure. *Id.* at 320.

*Storm* is similar. There, the decedent, *at the time of his death*, would have been barred by immunity pertaining to workers' compensation exclusivity, ORS 30.265(3), from maintaining a negligence-based action against the defendants. 334 Or at 223. Consequently, the plaintiff's wrongful death action was similarly barred—*i.e.*, the wrongful death action could not be maintained because the decedent could not have maintained an action as of the time of his death.

Decedent's circumstances here are dispositively distinguishable from those of the decedents in *Union Bank of California* and *Storm*. At the time of decedent's death in this case, nothing would have precluded her from bringing an action against defendants for her vaccine-related death. Although the Vaccine Act applied to decedent at the time of her death,[14] decedent had several options available to her under the Vaccine Act. Specifically, decedent could (1) bring a civil action in the amount of $1,000 or less; (2) file a petition, elect to withdraw it under certain circumstances, and pursue a civil action; (3) file a petition, elect to reject any judgment issued under the Program, and pursue a civil action; or (4) file a petition, elect to accept any judgment issued under the Program, and forfeit the right to pursue a civil action. 42 USC § 300aa-11(a)(2)(A). Under the first three of those options, decedent could have maintained an action, had she lived. We therefore conclude that, *at the time of her death*, decedent could have maintained an action against defendants for the same vaccine-related death that is the basis of plaintiff's wrongful death action.

---

[14] *See* 42 USC § 300aa-11(a)(9) (applying section 11(a) to "a person who has sustained a vaccine-related injury or death and who is qualified to file a petition for compensation under the Program"). It is not disputed that decedent was qualified under the Program.

■ Defendants contend, however, that, because decedent's estate did in fact file a petition for compensation under the Program and elected to accept the judgment issued under the Program, decedent was barred by the Vaccine Act from bringing a later civil action for injuries resulting from the same incident. Because our temporal benchmark for determining decedent's ability to maintain an action is at the time of her death, it is not relevant that decedent's estate *later* elected to accept the judgment issued under the Program. Although the Vaccine Act would have barred decedent from filing a civil action after that moment in time, it did not do so at the time of decedent's death. Thus, because decedent "might have maintained an action, had the decedent lived," plaintiff can maintain this derivative action, on behalf of decedent's children, under ORS 30.020(1).

The trial court erred in granting defendants' motion for summary judgment.

Reversed and remanded.