528 May 14, 2025 No. 432

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

Heidi LOGAN,
as Personal Representative of
the Estate of Diane Lee Scott,
*Plaintiff-Appellant,*

*v.*

WATERFORD OPERATIONS, LLC,
dba Avamere at Three Fountains,
*Defendant-Respondent.*

Jackson County Circuit Court
22CV18024; A183040

Charles G. Kochlacs, Judge.

Argued and submitted April 15, 2025.

Lisa T. Hunt argued the cause for appellant. Also on the briefs were Law office of Lisa T. Hunt, LLC, and Benjamin D. Nielsen, Justin I. Idiart, and The Idiart Law Group LLC.

Michael J. Estok argued the cause for respondent. Also on the brief was Jay W. Beattie and Lindsay Hart LLP.

Before Tookey, Presiding Judge, Kamins, Judge, and Jacquot, Judge.

JACQUOT, J.

Affirmed.

## JACQUOT, J.

Plaintiff Heidi Logan appeals a general judgment of dismissal entered after the trial court granted a motion for summary judgment in favor of defendant Waterford Operations, LLC, dba Avamere at Three Fountains. Plaintiff's mother was a resident at defendant's skilled nursing facility in Medford. On May 18, 2019, plaintiff's mother was taken from the facility to a hospital, where she died on June 3, 2019. Plaintiff, as the personal representative for the estate of her deceased mother, filed a wrongful death action against defendant three years later on June 3, 2022. Defendant moved for summary judgment on the ground that the action was untimely filed. The trial court granted the motion and entered a judgment dismissing the action.

On appeal, plaintiff argues that the trial court erred in granting the summary judgment motion. Having reviewed the parties' arguments and the summary judgment record, we conclude that there is no triable issue as to whether plaintiff knew facts no later than May 23, 2019, which would make a reasonable person aware of a substantial possibility that her mother had suffered a legally cognizable harm. Unfortunately for plaintiff, her attorney failed to commence the wrongful death action within three years of that date as required by ORS 30.020. We therefore agree with the trial court that plaintiff's wrongful death action was untimely filed. We affirm the trial court's grant of summary judgment in favor of defendant.

## I.  STANDARD OF REVIEW

Summary judgment is appropriate when there is no genuine issue of material fact. ORCP 47 C. "We review a trial court's grant of summary judgment for errors of law and will affirm if there are no genuine disputes about any material fact and the moving party is entitled to judgment as a matter of law." *Beneficial Oregon, Inc. v. Bivins*, 313 Or App 275, 277, 496 P3d 1104 (2021) (internal quotation marks omitted). In so doing, "we view the facts in the light most favorable to the nonmoving parties," and we "examine whether no objectively reasonable juror could find in their favor on the question at issue." *Id*. In making that determination,

"we examine 'the pleadings, depositions, affidavits, declarations, and admissions on file.'" *Id*. (quoting ORCP 47 C).

## II. FACTS

The following facts are taken from plaintiff's deposition testimony. After plaintiff's mother suffered a stroke, she was moved to defendant's nursing facility in February 2018. Plaintiff visited her mother daily. Plaintiff was unable to visit between May 13 and May 18, 2019, because her mother had an infection. When plaintiff visited on May 18, 2019, she observed staff slapping her mother and yelling her mother's name because she wasn't waking up. Her mother was "motionless with black feet and super, super cold." Her "face was gray and her lips were blue." One staff member told plaintiff that her mother had been in that condition for the last hour, but another said she had been like that for four days. Plaintiff demanded that staff call an ambulance, and her mother was taken to a hospital. At the hospital on May 18, 2019, a physician told plaintiff to create a timeline of events, and that her mother had been administered two doses of Narcan because she was "overdosed and unconscious." A nurse provided plaintiff with information regarding lawyers to contact.

On May 20, 2019, plaintiff returned to the nursing facility to clean out her mother's room. A staff member apologized to plaintiff for the treatment of her mother. On or before May 23, 2019, plaintiff learned that staff at the nursing facility had failed to act on "bad lab results."[1] Between May 18 and May 23, 2019, a manager at the nursing facility attempted to obtain plaintiff's signature on a document that plaintiff believed was a release from liability. Plaintiff's mother died on June 3, 2019.

On June 3, 2022, plaintiff filed a wrongful death action against defendant. Defendant filed an ORCP 21 motion to dismiss the complaint. The trial court denied the motion to dismiss but granted an alternative motion to make the allegations more definite. On December 2, 2022, plaintiff filed a first amended complaint alleging that, on

---

[1] It is not entirely clear what the lab work indicated, but it seems to have indicated that plaintiff's mother was suffering from kidney failure.

May 18, 2019, plaintiff found her mother "unresponsive and with a blue hue." Plaintiff alleged that, as a result of defendant's negligence "from May 15, 2019, through May 18, 2019," her mother "suffered acute hypotension, acute kidney failure, acute dehydration, acute failure to thrive, acute hyperkalemia, acute hypovolemic shock, [and] acute metabolic encephalopathy, which ultimately caused her death within two weeks."

Defendant deposed plaintiff in July 2023. Based on plaintiff's deposition testimony, defendant moved for summary judgment arguing that there was no genuine issue of material fact as to whether plaintiff knew that defendant had caused injury to her mother by May 18, 2019. In her response, plaintiff argued that the statute of limitations began to run on the date of her mother's death, and that the issue of when plaintiff discovered the injuries was a question of fact for the jury. Plaintiff offered no evidence in opposition to the summary judgment motion. After a hearing on the motion, the trial court granted it, finding that the complaint was not timely filed within the applicable statute of limitations. The trial court entered a general judgment of dismissal. Plaintiff appeals.

## III. ANALYSIS

We begin by describing the relevant legal framework. Applying that framework, we conclude that the trial court did not err in granting defendant's summary judgment motion because there is no genuine issue of material fact as to whether plaintiff had actual knowledge of a legally cognizable injury by May 23, 2019. As a result, plaintiff's wrongful death action, which was filed on June 3, 2022, was time-barred.

A.  *Legal Framework*

"In Oregon, an action for wrongful death is regarded as exclusively statutory in nature." *Union Bank of California v. Copeland Lumber Yards*, 213 Or App 308, 313, 160 P3d 1032 (2007). The wrongful death statute provides, in part:

> "When the death of a person is caused by the wrongful act or omission of another, the personal representative of the decedent * * * may maintain an action against the wrongdoer,

if the decedent might have maintained an action, had the decedent lived, against the wrongdoer for an injury done by the same act or omission. The action shall be commenced within three years after the injury causing the death of the decedent is discovered or reasonably should have been discovered by the decedent, by the personal representative or by a person for whose benefit the action may be brought under this section if that person is not the wrongdoer. In no case may an action be commenced later than the earliest of:

"(a)   Three years after the death of the decedent; or

"(b)   The longest of any other period for commencing an action under a statute of ultimate repose that applies to the act or omission causing the injury, including but not limited to the statutes of ultimate repose provided for in ORS 12.110(4), 12.115, 12.135, 12.137 and 30.905."

ORS 30.020(1). Although the statute creates a cause of action distinct from one that the decedent had while alive, "the new cause of action remains derivative of the decedent's rights." *Union Bank of California*, 213 Or App at 314-15 (internal quotation marks omitted). The statute "places a decedent's personal representative in the decedent's shoes, imputing to the personal representative whatever rights, and limitations to those rights, that the decedent possessed." *Storm v. McClung*, 334 Or 210, 223, 47 P3d 476 (2002). As a result, "a wrongful death action asserted under ORS 30.020(1) may arise for statute of limitations purposes while the decedent is still alive." *Martineau v. McKenzie-Willamette Medical Center*, 371 Or 247, 267, 533 P3d 1, *adh'd to as modified on recons*, 371 Or 408, 537 P3d 542 (2023). The purpose of the wrongful death statute is to "remove death as a bar to bringing the claim, not to make death the central event of the action." *Howell v. Willamette Urology, P.C.*, 344 Or 124, 129, 178 P3d 220 (2008).

Before 1991, the wrongful death statute did not contain a discovery rule. Instead, it provided that the action "'shall be commenced within three years after the occurrence of the injury causing the death of the decedent.'" *Eldridge v. Eastmoreland General Hospital*, 307 Or 500, 503, 769 P2d 775 (1989) (quoting ORS 30.020 (1989), *amended by* Or Laws 1991, ch 608, § 1). Notably, even the former version of the statute focused, for statute of limitations purposes, on

the occurrence of the injury, not the death of the decedent. *See Repp v. Hahn*, 45 Or App 671, 676, 609 P2d 398 (1980) (holding that the limitations period started to run when the decedent was injured, which occurred when a cancerous mole on her scalp began to grow).

In 1991, the wrongful death statute was amended to make its limitations period subject to the discovery rule and to add a period of ultimate repose beyond which no wrongful death action may be brought. *Kambury v. DaimlerChrysler Corp.*, 173 Or App 372, 375 n 2, 21 P3d 1089 (2001), *rev'd on other grounds*, 334 Or 367, 50 P3d 1163 (2002). Under the discovery rule, "a cause of action does not accrue until the plaintiff knows or should know that a tort was committed and that the defendant committed it." *Eldridge*, 307 Or at 502-03.

In *Gaston v. Parsons*, 318 Or 247, 251-52, 864 P2d 1319 (1994), the Supreme Court elucidated what it means for a plaintiff to discover an injury. The court held that "injury" as used on ORS 12.110(4)[2] means a "legally cognizable harm," and it consists of three elements: "(1) harm; (2) causation; and (3) tortious conduct." *Id.* at 255. The Supreme Court stated that,

> "Actual knowledge that each element is present is not required. On the other hand, a mere suspicion is insufficient to begin the statute of limitations to run. We believe that a quantum of awareness between the two extremes is contemplated by the statute. Therefore, the statute of limitations begins to run when the plaintiff knows or in the exercise of reasonable care should have known facts which would make a reasonable person aware of a substantial possibility that each of the three elements (harm, causation, and tortious conduct) exists."

*Id.* at 256. The Supreme Court further explained that "[w]hether a reasonable person of ordinary prudence would be aware of a substantial possibility of tortious conduct is a

---

[2] ORS 12.110(4) provides, in part that "[a]n action to recover damages for injuries to the person arising from any medical, surgical or dental treatment, omission or operation shall be commenced within two years from the date when the injury is first discovered or in the exercise of reasonable care should have been discovered." The parties do not dispute that the term "injury" should be understood in the same way in both ORS 12.110(4) and ORS 30.020(1). We agree. *See Gaston*, 318 Or at 253 ("words in a statute that have a well-defined legal meaning are to be given that meaning in construing the statute").

question of fact that depends upon the nature of the harm suffered, the nature of the medical procedure, and other relevant circumstances." *Id.*

In *Gaston*, after a surgical procedure, the plaintiff noticed that his left arm was numb and did not function, but a doctor assured him that the symptoms were temporary. *Id.* at 251. As a result of the doctor's assurance, and because immediate, adverse side-effects commonly result from medical treatment, the plaintiff's awareness of those symptoms was not sufficient to start the running of the statute of limitations. *Id.* at 256-58. The Supreme Court determined that there was a genuine issue of material fact as to when the plaintiff should have discovered a substantial possibility of tortious conduct, so the defendant was not entitled to summary judgment on statute of limitations grounds. *Id.* at 258.

In *Doe v. American Red Cross*, 322 Or 502, 505-06, 910 P2d 364 (1996), the plaintiff's deceased husband learned that he was HIV positive as a result of a transfusion of blood that the Red Cross had supplied. Therefore, he knew or was aware at that time that the defendant's conduct had caused harm. *Id.* at 512-13. However, given the nascent state of the law and science with respect to HIV and AIDS in 1987, the Supreme Court determined that there were material issues of fact as to what the plaintiff and her husband would have learned if they had inquired into whether the Red Cross had acted tortiously. *Id.* at 515. Therefore, the statute of limitations on the claim did not begin to run at that time, and the defendants were not entitled to summary judgment on statute of limitations grounds. *Id.*

In *Greene v. Legacy Emanuel Hospital,* 335 Or 115, 60 P3d 535 (2002), the plaintiff suffered an injury during surgery that required her to recuperate in the hospital for 11 days afterwards. *Id.* at 118. In considering whether her action was time-barred, the Supreme Court explained that "in the ordinary medical malpractice case, a plaintiff's awareness that a medical procedure has resulted in a distinct injury, and that the defendant doctor's actions caused that injury, will establish the plaintiff's discovery, either actual or imputed, of the defendant's tortious conduct." *Id.* at 127. Although special circumstances surrounding a medical

procedure—such as a doctor's assurances to the contrary (*Gaston*) or a novel issue of medical science (*Doe*)—can create a factual question about when the plaintiff discovered or should have discovered the presence of tortious conduct from the fact of injury, in *Greene* the Supreme Court determined that special circumstances of that nature did not exist. *Id.* at 128. The Supreme Court concluded that the plaintiff "discovered or reasonably should have discovered that she had suffered *** legally cognizable harm" while she was recuperating after the surgery and certainly no later than when her lawyer received her medical records. *Id.* at 129. Because the plaintiff failed to commence her action within two years of those dates, the trial court did not err in granting the physician's motion for summary judgment.[3] *Id.*

### B.  *Applying the Legal Framework*

The instant case is more like *Greene* than *Gaston* or *Doe*. This case is not like *Gaston*, in which a physician assured the plaintiff that his post-surgery symptoms were temporary. To the contrary, on May 18, 2019, a physician told plaintiff that Narcan was administered to her mother and that plaintiff should keep a timeline of events, and a nurse provided plaintiff with a list of attorneys. Nor is the instant case like *Doe*, which addressed a novel medical issue. Instead, on May 18, 2019, plaintiff observed that her mother was "motionless with black feet and super, super cold," her "face was gray and her lips were blue," staff were slapping her mother and yelling her name in an attempt to wake her up, and a staff member told plaintiff that her mother had been in that condition for days. Plaintiff became aware of additional facts between May 18 and May 23, 2019, including that the nursing facility may have failed to act on bad lab results, and a manager attempted to obtain plaintiff's signature on a release of liability.

Considering that evidence, there is no genuine issue of material fact as to whether plaintiff had actual knowledge by May 23, 2019, of "some invasion of a legally protected interest" by defendant. *Greene*, 335 Or at 124 (internal quotation marks omitted). In other words, by that date, plaintiff

---

[3] In *Greene*, 335 Or at 120, the court applied the two-year period of limitations set out in ORS 12.110(4).

knew "facts which would make a reasonable person aware of a substantial possibility that each of the three elements (harm, causation, and tortious conduct) exists." *Gaston*, 318 Or at 256. Those facts included her observations of her mother's condition between May 18 and May 23, and what she observed and was told by staff at the nursing facility and at the hospital. Because plaintiff had actual knowledge of legally cognizable harm by May 23, 2019, the three-year statute of limitations for plaintiff's wrongful death action began to run no later than that date, not almost two weeks later when her mother died.[4] *See Martineau*, 371 Or at 267 ("[A] wrongful death action asserted under ORS 30.020(1) may arise for statute of limitations purposes while the decedent is still alive.").

In arguing otherwise, plaintiff claims that her "generalized belief" and "strongly held opinions" that defendant was not properly caring for her mother did not constitute actual or constructive knowledge of a legally cognizable claim. But the key question is when plaintiff had actual or constructive knowledge of facts giving rise to a substantial possibility that defendant's tortious conduct caused harm to her mother. *See Gaston*, 318 Or at 256 (explaining that the relevant quantum of awareness lies between actual knowledge and a mere suspicion of the elements of legal cognizable harm). Reviewing the record in the light most favorable to plaintiff, her deposition testimony shows that, by May 23, 2019, she had actual knowledge of such facts.

Plaintiff concedes that she knew that her mother had been harmed on May 18, 2019, but she contends that she did not know the cause of the harm or defendant's tortious conduct until later.[5] The summary judgment record does not support her contention. On May 18, 2019, as well as observing that her mother was unresponsive and had a blue hue, plaintiff also observed staff slapping and yelling at her

---

[4] Given our conclusion that the statute of limitations began running no later than May 23, we need not, and do not, consider the sufficiency of the facts that plaintiff knew on May 18.

[5] Defendant argues that plaintiff failed to preserve that argument. We view plaintiff's arguments at the summary judgment hearing, where she argued that she had no actual or constructive knowledge of the cause of her mother's death, as sufficient to preserve the argument she makes on appeal.

mother, plaintiff learned that her mother may have been in that condition for days, and hospital staff told plaintiff to create a timeline of events and contact an attorney. And on or before May 23, plaintiff learned that the facility had failed to address bad lab results. Thus, by that time, plaintiff had actual knowledge of facts which would make a reasonable person aware of a substantial possibility that defendant's tortious conduct caused harm to her mother. *See Frohs v. Greene*, 253 Or 1, 7, 452 P2d 564 (1969) ("Normally, knowledge of injury as a result of [the] defendants' actions would put the injured party on sufficient notice of [the] defendants' tortious conduct to commence the running of the statute.").

Plaintiff argues that her deposition testimony was riddled with inadmissible hearsay which could not be the basis for ruling on a summary judgment motion. But plaintiff did not make that argument in the trial court. Thus, she failed to preserve it. *See* ORAP 5.45(1) ("No matter claimed as error will be considered on appeal unless the claim of error was preserved in the lower court[.]"); *State v. Skotland*, 372 Or 319, 327, 549 P3d 534 (2024) ("[P]reservation requires a party to explain its objection clearly enough for the opposing party, and the trial court, to understand the issue and either avoid an error, or correct an error if one has occurred."). Plaintiff does not request plain-error review of the issue, so we decline to further address it. *See State v. Ardizzone*, 270 Or App 666, 673, 349 P3d 597, *rev den*, 358 Or 145 (2015) (declining to undertake plain-error analysis where defendant did not request it).

Plaintiff's final argument is that discovery of her legally cognizable claim required confirmation by a medical professional.[6] In making that argument, plaintiff relies on *Keller v. Armstrong World Industries, Inc.*, 342 Or 23, 147 P3d 1154 (2006), an asbestos case in which the Supreme Court determined that the two-year statute of limitations in ORS 30.907(1) did not bar the plaintiff's claim for products liability. *Id.* at 26, 31. That statute of limitations requires discovery of an asbestos-related "disease and the cause thereof." ORS 30.907(1). The Supreme Court determined that, on the

---

[6] Defendant also argues that that argument was not preserved. Once again, we view plaintiff's arguments at the summary judgment hearing as sufficient for preservation purposes.

record before it, "a reasonable juror could find that, in light of the difficulty of determining whether asbestos or some other agent *** was the cause of plaintiff's pulmonary conditions, plaintiff lacked the ability to discover the cause of those conditions without a diagnosis from a medical professional." *Keller*, 342 Or at 32.

By contrast, here, the relevant statute of limitations does not require discovery of medical causation. Instead, it requires discovery of "the injury causing the death of the decedent." ORS 30.020(1). As already explained, that "injury" means legally cognizable harm, which is a harm caused by the tortious conduct of another. Here, there is no triable issue as to whether, by May 23, 2019, plaintiff was aware of facts giving rise to a substantial possibility that defendant's tortious conduct caused harm to her mother. No diagnosis from a medical professional was necessary for plaintiff's actual discovery of those facts, which is distinct from questions about the underlying medical cause of her mother's condition. Accordingly, defendant's reliance on *Keller* is misplaced.

In addition, *Keller* is factually distinguishable. In *Keller*, the plaintiff had repeatedly sought medical treatment for his pulmonary problems, but his doctors did not diagnose him as having an asbestos-related disease for many years. 342 Or at 32. Thus, a medical diagnosis was necessary in part because of the difficulty of determining whether the plaintiff's condition was caused by an asbestos-related disease. *Id.* By contrast here, plaintiff's deposition testimony shows that, based on her own observations between May 18 and May 23, she had no difficulty concluding that defendant's acts or omissions had caused harm to her mother. No medical diagnosis was necessary for plaintiff to discover that she had a claim. As the Supreme Court explained it in *Greene*, a "'plaintiff whose condition has not yet been diagnosed by a physician can have or, in the exercise of reasonable care, could have access to information which requires or would require a reasonable person to conclude she is being seriously or permanently injured.'" *Greene*, 335 Or at 129 (quoting *Schiele v. Hobart Corporation*, 284 Or 483, 490, 587 P2d 1010 (1978)).

The summary judgment record shows that there is no triable issue as to whether plaintiff had actual knowledge, by May 23, 2019, of facts which would make a reasonable person aware of a substantial possibility that defendant's tortious conduct caused harm to her mother resulting in her mother's death almost two weeks later. Therefore, plaintiff's wrongful death action, which was filed on June 3, 2022, was barred by the three-year statute of limitations in ORS 30.020(1). By waiting until then to file the lawsuit, plaintiff's counsel deprived her of the opportunity to pursue her claim for wrongful death. The trial court did not err when it granted defendant's motion for summary judgment and dismissed the case.

Affirmed.